**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

              Plaintiff,

    v.                            1:25-cv-00205 (AMN/MJK)

STATE OF NEW YORK *et al.*,

              Defendants.

| | |
|---|---|
| **APPEARANCES:** | **OF COUNSEL:** |
| **U.S. DEPARTMENT OF JUSTICE**<br>**CIVIL DIVISION**<br>1110 L Street NW<br>Washington, D.C. 20005<br>*Attorneys for Plaintiff* | **CRISTEN CORI HANDLEY, ESQ.** |
| **HON. LETITIA JAMES**<br>New York State Attorney General<br>28 Liberty Street<br>New York, New York 10005<br>*Attorney for Defendants* | **LINDA FANG, ESQ.**<br>**ALEXANDER POWHIDA, ESQ.** |

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

On February 12, 2025, the United States of America ("Plaintiff") commenced this action

against the State of New York ("New York State") and three of its officials (collectively,

"Defendants"), seeking declaratory and injunctive relief in connection with a state law known as

the Driver's License Access and Privacy Act (the "Green Light Law").  Dkt. No. 1 ("Complaint").

Presently before the Court is Defendants' motion to dismiss the Complaint.  Dkt. No. 10

("Motion"); *see also* Dkt. Nos. 24, 30.  For the reasons set forth below, the Court grants the

Motion[1] and dismisses the Complaint.

## II.   BACKGROUND

### A.  The Parties

Plaintiff is the United States of America.  Dkt. No. 1 at ¶ 12.  New York State is one of the fifty United States.  *Id.* at ¶ 13.  Defendant Kathleen Hochul is the Governor of New York State ("Governor"), *id.* at ¶ 14, Defendant Letitia A. James is the Attorney General of New York State ("Attorney General"), *id.* at ¶ 15, and Defendant Mark J.F. Schroeder is the Commissioner of the New York State Department of Motor Vehicles ("Commissioner"), *id.* at ¶ 16.   All three individuals are sued exclusively in their official capacities.  *Id.* at ¶ 17.

### B.  Relevant Constitutional Principles

The American system of government is one of dual sovereignty, because both the federal government and the states wield sovereign powers.  *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 470 (2018).   Nonetheless, state sovereignty is limited in several ways under the Constitution, including through two doctrines that are relevant in this case: preemption and intergovernmental immunity.  The Supremacy Clause provides that "federal law is the 'supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  *Id.* at 471 (alteration in original) (quoting U.S. Const. art. VI, cl. 2).  As a result, when federal and state law conflict, federal law is supreme and state law is preempted.  *Id.*  The Supremacy Clause also "generally immunizes the Federal Government from state laws that directly regulate or discriminate against it."  *United States v. Washington*, 596 U.S. 832, 835 (2022) (citation omitted).  Such intergovernmental immunity prevents any state from interfering with or

---

[1] The Court also grants the unopposed motions for leave to file *amicus* briefs.  Dkt. Nos. 17, 29; *see also United States v. Adams*, 348 F.R.D. 408, 409 (S.D.N.Y. 2025) ("[D]istrict courts have broad discretion to permit or deny an appearance as amicus curiae in a case.") (citations omitted).

controlling the federal government's operations. *Id.* at 838.

But the Constitution does not grant unlimited legislative powers to Congress. *Murphy*, 584 U.S. at 471. Rather, Congress' legislative powers are certain and enumerated, and "all other legislative power is reserved for the States, as the Tenth Amendment confirms." *Id.*

### C. Federal Immigration Law

The federal government has broad and undoubted power with respect to immigration. *Arizona v. United States*, 567 U.S. 387, 394 (2012). "Congress's 'extensive and complex' codification of that power" is set forth in the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq. New York v. Dep't of Just.*, 951 F.3d 84, 113 (2d Cir. 2020) (quoting *Arizona*, 567 U.S. at 395).

"'[C]onsultation between federal and state officials is an important feature of the immigration system' established by the INA." *Id.* at 113-14 (quoting *Arizona*, 567 U.S. at 411). Section 1373 of the INA provides in pertinent part that:

> Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual.

8 U.S.C. § 1373(a).

### D. Relevant Law Regarding Driver's Licenses

As the Second Circuit explained in prior litigation involving the Green Light Law:

> Though the processing of driver's licenses is governed almost exclusively by state law, federal law also imposes certain requirements. In 2005, Congress passed the REAL ID Act, Pub. L. No. 109-13, §§ 201-02, 119 Stat. 302, 311 (2005) (codified at 49 U.S.C. § 30301 note). Among other provisions, the Act sets forth minimum requirements that state-issued driver's licenses and identification documents must meet if they are to confer all the privileges of REAL ID Act-compliant licenses, such as entering federal facilities or boarding federally regulated commercial

3

aircraft.  *Id.* §§ 201(3), 202(a)(1).

To issue a REAL ID Act-compliant license, a state must verify an applicant's "lawful status" with Department of Homeland Security databases and maintain copies of the applicant's proof of that status.  *Id.* § 202(b)-(d).  "Lawful status" includes citizens and lawful permanent residents, but also includes certain persons who may have entered the country without preauthorization, such as those with deferred action status or pending asylum applications.  *Id.* § 202(c)(2)(B); 6 C.F.R. § 37.3.

The REAL ID Act does not bar states from continuing to issue driver's licenses that do not comply with the Act.  *See* REAL ID Act § 202(d)(11); 6 C.F.R. § 37.71(a).  The Act requires states to maintain individuals' proofs of identity only when they apply for REAL ID Act-compliant licenses, *see* REAL ID Act § 202(d)(2), (11), and although the Act requires states to collect a social security number or proof of ineligibility from any applicant for a compliant license, it imposes no such requirement on applicants for noncompliant licenses.  *See* REAL ID Act § 202(c)(1)(C), (d)(11).  Notably, the REAL ID Act does not require states to verify the lawful status of applicants for noncompliant licenses.  *See* REAL ID Act § 202(c)(2)(B), (d)(11).

Regardless of whether a putative applicant would be eligible for a REAL ID-Act compliant license, under New York law applicants may apply for what are known as "standard licenses."  In June 2019, the New York legislature enacted the [Green Light Law] that establishes certain policies and procedures related to standard licenses.  2019 N.Y. Laws, Ch. 37.  The Green Light Law directs the [DMV] to accept various foreign documents as proof of identification and age for standard licenses, and prohibits DMV from inquiring about the immigration status of standard-license applicants.  (N.Y. Veh. & Traf. Law ("VTL") § 502(1), (8)).  The law also provides that—in lieu of a social security number or proof of ineligibility—applicants for a standard license may submit an affidavit attesting that they have not been issued a social security number.  (*Id.* §§ 502(8)).  Standard licenses are branded as "Not for Federal Purposes."  *Id.*

The Green Light Law also restricts DMV's retention and use of certain applicant information (the "[N]ondisclosure [P]rovision[]"). . . . Except as required by federal law to renew or issue a federally compliant license, the Act prevents the DMV from disclosing an applicant's records or information to "any agency that primarily enforces immigration law or to any employee or agent of such agency" absent a lawful court order or judicial warrant.  *Id.* § 201(12)(a).  The Act also requires persons with access to DMV records to certify to the DMV commissioner that they will not make such disclosures.  (*Id.* § 201(12)(b) [(the "Certification

> Provision")[2]]).
>
> Finally, the Green Light Law requires that within three days of receiving a request for information or records from federal immigration authorities, DMV provide written notification to the subject of the request and inform the person of the identity of the requesting agency (the "[N]otification [P]rovision"). *Id.* § 201(12)(a).

*Kearns v. Cuomo*, 981 F.3d 200, 204-05 (2d Cir. 2020).

Notably, the Green Light Law does not apply to commercial driver's licenses. *See, e.g.*, Dkt. No. 10-1 at 10 n.1 (stating that the Green Light Law "did not amend the standards for issuing commercial driver's licenses or information sharing concerning applicants for such licenses. Commercial licenses are issued pursuant to different requirements not relevant here"); *see also* Dkt. No. 17-2 at 8-9, 12; Dkt. No. 24-1 at 11.[3]

### E. Plaintiff's Allegations

Plaintiff is responsible for enforcing federal immigration laws. *See, e.g.,* Dkt. No. 1 at ¶¶ 12, 18-27. Plaintiff alleges that "[t]he United States is currently facing a crisis of illegal immigration." *Id.* at ¶ 1 (citing Proclamation 10,866, 90 Fed. Reg. 8327 (Jan. 20, 2025)). The cited proclamation indicates that this crisis began in or about January 2021.

New York State enacted the Green Light Law approximately two years earlier in 2019. *Id.* at ¶ 28; *see also supra* Section II.D. Plaintiff alleges that certain provisions of the Green Light Law, as amended, interfere with the enforcement of federal immigration laws in New York State. *See, e.g.,* Dkt. No. 1 at ¶¶ 2, 29. Plaintiff specifically challenges the (i) Nondisclosure Provision, *id.* at ¶ 30; (ii) Notification Provision, *id.* at ¶ 32; and (iii) Certification Provision, *id.* at ¶ 33.

---

[2] The Certification Provision states that violation of a certification is a criminal offense and also includes certain record-keeping requirements for any certifying person or entity. *Id.*; *see also* Dkt. No. 1 at ¶ 33.

[3] Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the documents' internal pagination.

## F.  Plaintiff's Claims

Based on these allegations, Plaintiff contends that the challenged provisions of the Green Light Law are unconstitutional because they: (i) are preempted by federal immigration law, *id.* at ¶¶ 42-49; (ii) impermissibly regulate the federal government, *id.* at ¶¶ 50-53; and (iii) impermissibly discriminate against the federal government, *id.* at ¶¶ 54-57.  Plaintiff seeks, *inter alia*, a declaration that the Green Light Law violates the Supremacy Clause and a permanent injunction barring enforcement of the statute.  *Id.* at 15-16.

## III.    STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of a party's claim for relief.  *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007).  To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to sho[w] that the pleader is entitled to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (alteration in original) (quotations omitted). Under this standard, a pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570.  In considering legal sufficiency, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences in the pleader's favor.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  This presumption, however, does not extend to legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

## IV.    DISCUSSION

At the outset, the Court finds it appropriate to reiterate the Second Circuit's prior observations regarding a constitutional challenge brought by New York State and others in

connection with federal immigration enforcement efforts:

> Th[is] case implicates several of the most divisive issues confronting our country and, consequently, filling daily news headlines: national immigration policy, the enforcement of immigration laws, the status of illegal aliens in this country, and the ability of States and localities to adopt policies on such matters contrary to, or at odds with, those of the federal government.

*New York*, 951 F.3d at 90.

These observations remain as relevant today as they were when initially made more than five years ago. With such issues as the backdrop, that the parties and *amici* invite this Court to assess the desirability of numerous competing policy objectives is understandable. *See, e.g.,* Dkt. No. 10-1 at 15-20; Dkt. No. 24-1 at 19-21; Dkt. No. 17-2 at 6-7. But it is also beside the point. *See, e.g., United States v. City of Rochester et al.*, Case No. 25-cv-06226, Dkt. No. 58 at 2-3 (W.D.N.Y. filed Apr. 24, 2025) ("Federal courts have no authority to issue 'advisory opinions' on the important political debates of the day.") (citation omitted). The Court's role is not to evaluate the desirability of the Green Light Law as a policy matter, but rather to assess whether Plaintiff's well-pled allegations, accepted as true, establish that the challenged provisions of the Green Light Law violate the Constitution's Supremacy Clause. For the reasons set forth below, the Court concludes that Plaintiff has failed to state such a claim.

### A. Standing

As an initial matter, the parties dispute whether the Governor and the Attorney General are proper defendants in this action. Dkt. No. 10-1 at 32; Dkt. No. 24-1 at 32-33.

Plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing Article III standing. *Soule v. Conn. Ass'n of Schs., Inc.*, 90 F.4th 34, 45 (2d Cir. 2023) (*en banc*). To do so, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."

7

*Moreira v. Société Générale, S.A.*, 125 F.4th 371, 384 (2d Cir. 2025) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice . . . ." *Soule*, 90 F.4th at 45 (alteration in original) (quoting *Lujan v. Defs of Wildlife*, 504 U.S. 555, 561 (1992)).

Defendants argue that Plaintiff has failed to plead that any alleged injury is traceable to either the Governor or the Attorney General. Dkt. No. 10-1 at 32. Specifically, Defendants contend that Plaintiff has not alleged that the Governor and the Attorney General are involved in the enforcement or administration of the challenged provisions of the Green Light Law. *Id.* In response, Plaintiff identifies no allegation to the contrary. Dkt. No. 24-1 at 32-33. Instead, Plaintiff first argues that it has satisfied a different element of standing against a different defendant, because "an injunction against the State of New York—which Defendants do not dispute is a proper party—would fully redress the United States' injuries." *Id.* at 32. This argument fails as a legal matter. Redressability against New York State does not establish traceability as to the Governor or the Attorney General. *See, e.g., Murthy v. Missouri*, 603 U.S. 43, 61 (2024) ("Our decisions make clear that 'standing is not dispensed in gross.' . . . That is, 'plaintiffs must demonstrate standing for each claim that they press' against each defendant, 'and for each form of relief that they seek.'") (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)); *Moreira*, 125 F.4th at 384-85 ("[A]t the pleading stage, the plaintiff must clearly . . . allege facts demonstrating each element of standing.") (alterations in original) (quotations and citations omitted).

Plaintiff next argues that because the Governor and the Attorney General have allegedly

8

made a few public statements in support of the Green Light Law,[4] they "have sufficient connection to the challenged law irrespective of whether the officer is expressly responsible for enforcing the law." Dkt. No. 24-1 at 33. This argument also lacks merit. *See, e.g., Gazzola v. Hochul*, 645 F. Supp. 3d 37, 59 (N.D.N.Y. 2022) ("These vague connections, and other similarly tenuous connections Plaintiffs allege, are wholly insufficient to establish any connection between Defendants Hochul and James and the enforcement of the New York laws at issue.") (collecting cases); *United States v. Illinois*, 796 F. Supp. 3d 494, 511 (N.D. Ill. 2025) (finding alleged public statement by state official insufficient to establish either traceability or redressability and dismissing Plaintiff's Supremacy Clause claims against that individual); *see also Nat'l Shooting Sports Found., Inc. v. James*, 144 F.4th 98, 109 n.3 (2d Cir. 2025) ("Appellants make much of the fact that various State officials have expressly stated that, in their view, the purpose of [the challenged state law] is to override [a federal law]. . . . But whatever the views of various State officials regarding the purpose of [the challenged state law], the question before this Court is whether the statute as written and enforced is preempted by [federal law]. The State's intent, ultimately, is irrelevant.") (citations omitted).

In sum, Plaintiff has failed to allege, and does not argue, that the Governor or the Attorney General has any role in enforcing the challenged provisions of the Green Light Law. *See generally* Dkt. Nos. 1, 24-1. As a result, Plaintiff has not pled that any alleged injury is traceable to either the Governor or the Attorney General and the Court dismisses all claims against these defendants.

---

[4] The Complaint's sole mention of the Governor, Dkt. No. 1 at ¶ 14, does not allege that she made any statement, however, and Plaintiff "cannot (as a party represented by counsel) constructively amend the [ ] Complaint merely by making arguments in a response brief." *Lama v. Meta Platforms, Inc.*, 732 F. Supp. 3d 214, 223 (N.D.N.Y. 2024).

## B. Preemption

The Court next addresses the parties' preemption arguments.[5]  In general, there are three types of preemption:

> (1) express preemption, where Congress has expressly preempted local law; (2) field preemption, "where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law"; and (3) conflict preemption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives.

*Nat'l Shooting Sports*, 144 F.4th at 108 (quoting *N.Y. SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 104 (2d Cir. 2010)).  All three types of preemption function similarly: "Congress enacts a law that imposes restrictions or confers rights on private actors; a state law confers rights or imposes restrictions that conflict with the federal law; and therefore the federal law takes precedence and the state law is preempted." *Murphy*, 584 U.S. at 477.  Plaintiff alleges that express and conflict preemption, but not field preemption, render the challenged provisions of the Green Light Law unconstitutional.  Dkt. No. 1 at ¶¶ 42-49.

### 1. Express Preemption

Express preemption occurs where Congress "withdraw[s] specified powers from the States

---

[5] The parties also dispute whether the presumption against preemption should apply in this case. *See, e.g.,* Dkt. No. 10-1 at 15-17; Dkt. No. 24-1 at 19-20; *Williams v. Marinelli*, 987 F.3d 188, 199 (2d Cir. 2021) ("In all pre-emption cases . . . we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'") (alteration in original) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)).  The Second Circuit has observed, in connection with the Green Light Law, that "the processing of driver's licenses is governed almost exclusively by state law[.]" *Kearns*, 981 F.3d at 204; *see also Castle v. United States*, No. 15-cv-0197, 2017 WL 6459514, at *12 (N.D.N.Y. Dec. 18, 2017) ("[I]t has been recognized that 'states have the power to regulate the use of motor vehicles on their highways.' . . . Consequently, because there is no federal traffic law, the relevant VTL sections do not 'conflict with an affirmative command of Congress.'") (citations omitted). The Court does not reach this issue, however.  Even without any presumption, Plaintiff's preemption claim fails for the reasons set forth herein.

by enacting a statute containing an express preemption provision." *Art & Antique Dealers League of Am., Inc. v. Seggos*, 121 F.4th 423, 428 (2d Cir. 2024) (alteration in original) (first quoting *Arizona*, 567 U.S. at 399; and then citing *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993)).

Plaintiff contends that the Green Light Law's Non-Disclosure and Certification Provisions are expressly preempted by 8 U.S.C. § 1373.[6]  Dkt. No. 24-1 at 15-17.  Defendants argue, *inter alia*, that this claim fails because Section 1373 does not reach the DMV information covered by the challenged provisions of the Green Light Law, because this information does not include immigration or citizenship status.  Dkt. No. 10-1 at 20.  The Court agrees.

Section 1373 provides that a "State[] or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual."  8 U.S.C. § 1373(a).  By contrast, the Green Light Law prohibits inquiry by state officials regarding the "citizenship or immigration status" of standard-license applicants, *see* N.Y. Veh. & Traf. Law § 502(8); *see also Kearns*, 981 F.3d at 204 ("The Green Light Law . . . prohibits DMV from inquiring about the immigration status of standard license applicants.") (citing, *inter alia*, N.Y. Veh. & Traf. Law § 502(8)).  As such, no conflict is apparent from the face of the statutes.  *Buono v. Tyco Fire Prods., LP*, 78 F.4th

---

[6] The Complaint alleges that 8 U.S.C. § 1644 is "similar" to Section 1373, Dkt. No. 1 at ¶ 25, and the parties identify no material difference between the relevant provisions in each statute.  *United States v. New York*, No. 25-cv-744, --- F. Supp. 3d ----, 2025 WL 3205011, at *14 n.8 (N.D.N.Y. Nov. 17, 2025) ("Courts have generally held that the relevant provisions in Sections 1373 and 1644 have no meaningful difference and have analyzed them together.") (citing *Cnty. of Ocean v. Grewal*, 475 F. Supp. 3d 355, 371-72 & n.13 (D.N.J. 2020)); *Illinois*, 796 F. Supp. 3d at 515 ("As § 1644 contains nearly identical language [to § 1373], and the parties treat the two statutory provisions as coextensive, the court analyzes them as one.") (collecting cases).

490, 496 (2d Cir. 2023) ("We begin 'with the language of the statute itself, and that is also where the [express preemption] inquiry should end, for the statute's language is plain.'") (quoting *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016)).

As it has done elsewhere, Plaintiff nonetheless proposes a sweeping interpretation of Section 1373, arguing that the use of the term "regarding" expands the scope of Section 1373 to reach all matters relating to citizenship or immigration status. Dkt. No. 24-1 at 16; *see also Illinois*, 796 F. Supp. 3d at 516. According to Plaintiff, "under a proper reading," Section 1373 empowers federal officials "to receive information from States that is relevant in some way to immigration status, such as DMV information." Dkt. No. 24-1 at 17; *see also* Dkt. No. 1 at ¶ 45. Plaintiff contends that this DMV information includes, *inter alia*, "an applicant's photograph, 'telephone number, place of birth, country of origin, place of employment, school or educational institution attended, source of income, status as a recipient of public benefits, the customer identification number associated with a public utilities account, [and] medical information or disability information,'" Dkt. No. 24-1 at 13 (alteration in original) (citation omitted); *see also id.* at 17; Dkt. No. 1 at ¶¶ 31, 38.

The Court rejects Plaintiff's proposed interpretation of Section 1373, as have other courts to confront the issue. *See, e.g., New York*, 2025 WL 3205011, at *14 ("The statutes cited by the United States, 8 U.S.C. §§ 1373 and 1644 . . . do not give rise to a conflict. These statutes reach only information about an individual's citizenship or immigration classification (*e.g.*, lawful permanent resident, visa holder, asylum seeker), and not all personal information about an individual.") (collecting cases); *Illinois*, 796 F. Supp. 3d 494 at 516 ("This issue has been treated extensively by other courts. Without exception, each has rejected the United States's capacious reading of § 1373.") (collecting cases). This Court finds it unnecessary to spill further judicial ink

12

on the issue, other than to note that this "conclusion is amply supported by the text, structure, and history of § 1373." *Illinois*, 796 F. Supp. 3d 494 at 516; *see also City & Cnty. of San Francisco v. Garland*, 42 F.4th 1078, 1085 (9th Cir. 2022) ("We have rejected DOJ's interpretation of Section 1373 repeatedly . . . . As we stated [previously], Section 1373 only covers immigration-status information—*i.e.*, 'what one's immigration status is.'") (citation omitted); *Cnty. of Ocean*, 475 F. Supp. 3d at 376 (concluding after analyzing numerous cases that "plainly, the phrase 'regarding the citizenship or immigration [status], lawful or unlawful of any individual' means just that— information relating to the immigration status of an alien, including his/her citizenship"), *aff'd sub nom.*, 8 F.4th 176 (3d Cir. 2021).

For these reasons, Plaintiff has not plausibly alleged that the challenged provisions of the Green Light Law are expressly preempted by federal law.

### 2. Conflict Preemption

Conflict preemption can occur in two scenarios: "(1) 'where it is impossible for a private party to comply with both state and federal requirements'; or (2) 'where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Nat'l Shooting Sports*, 144 F.4th at 112 (quoting *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995)). "The burden of establishing obstacle preemption, like that of impossibility preemption, is heavy: 'the mere fact of tension between federal and state law is generally not enough to establish an obstacle supporting preemption, particularly when the state law involves the exercise of traditional police power.'" *N.Y. State Telecomms. Ass'n, Inc. v. James*, 101 F.4th 135, 155 (2d Cir. 2024) (quoting *In re MTBE Prods. Liab. Litig.*, 725 F.3d 65, 101-02 (2d Cir. 2013)). Instead of simply tension, "there must be a 'sharp' conflict between state law and federal policy." *Williams*, 987 F.3d at 198 (citing *Marsh v. Rosenbloom*, 499 F.3d 165, 178 (2d Cir. 2007)). As a

result, "[f]ederal law does not preempt state law under obstacle preemption analysis unless the repugnance or conflict is so direct and positive that the two acts cannot be reconciled or consistently stand together." *Id.* at 198-99 (quoting *In re MTBE*, 725 F.3d at 102).

Plaintiff alleges that the challenged provisions of the Green Light Law are conflict preempted, not because of impossibility, but rather because the provisions purportedly create an obstacle to federal immigration enforcement efforts. Dkt. No. 1 at ¶¶ 46-48; *see also* Dkt. No. 24-1 at 19-24. Defendants contend that Plaintiff's conclusory allegations fail to establish any actual conflict between federal law and the challenged provisions of the Green Light Law. *See, e.g.,* Dkt. No. 10-1 at 27, 29. For the reasons discussed below, the Court agrees.

The sum of Plaintiff's contentions with respect to conflict preemption is that it could be easier to enforce federal immigration priorities if federal authorities had unfettered access to New York State's DMV information. Dkt. No. 1 at ¶¶ 46-48; *see also* Dkt. No. 24-1 at 19-24. Numerous other courts have also addressed arguments of this type. *See, e.g., New York*, 2025 WL 3205011, at *14 ("Similarly, [the challenged state order] is not preempted because no provision of the INA obligations state officials to provide federal immigration authorities with personal information about its residents. Courts have consistently upheld similar information-sharing restrictions against conflict preemption challenges.") (collecting cases); *Illinois*, 796 F. Supp. 3d at 529, 531, 533 ("There's no doubt—particularly at the motion to dismiss stage where well-pleaded allegations are presumed true—that, absent the [challenged state laws], it might be easier for immigration agents to discharge their obligations under the INA. . . . But because the INA merely offers States the opportunity to assist in civil immigration enforcement, the [challenged state laws] don't make ICE's job more *difficult*; they just don't make it *easier*. . . . [And b]ecause the INA gives States the option to share information, but does not require it, the [challenged state

14

laws] do not pose an obstacle. . . . In sum, the United States has failed to plead conflict preemption as to any challenged [state law].") (citation omitted); *McHenry Cnty. v. Raoul*, 44 F.4th 581, 592 (7th Cir. 2022) ("Congress may have hoped or expected that States would cooperate with any requests from the Attorney General. . . . But Illinois and the other States are not bound by that hope or expectation. . . . It would make no sense to hold that a federal statute premised on State cooperation preempts a state law withholding that cooperation.  The [challenged state law] is not invalid as a matter of field or conflict preemption."); *United States v. California*, 921 F.3d 865, 888 (9th Cir. 2019) ("The district court concluded that this frustration does not constitute obstacle preemption: 'California's decision not to assist federal immigration enforcement in its endeavors is not an 'obstacle' to that enforcement effort.  [The United States'] argument that [the challenged state laws] makes immigration enforcement far more burdensome begs the question: more burdensome than what?  The laws make enforcement more burdensome than it would be if state and local law enforcement provided immigration officers with their assistance.  But refusing to help is not the same as impeding.  If such were the rule, obstacle preemption could be used to commandeer state resources and subvert Tenth Amendment principles.' . . . We agree.") (first alteration in original) (quoting *United States v. California*, 314 F. Supp. 3d 1077, 1104 (E.D. Cal. 2018)).

This Court reaches a similar result.  Defendants are correct that Plaintiff's conflict preemption claim is foreclosed by Plaintiff's inability to identify any federal statute that requires New York State to provide DMV information for standard license applicants to federal immigration authorities.  Dkt. No. 10-1 at 27; *see also New York*, 2025 WL 3205011, at *15 ("Fundamentally, the United States fails to identify any federal law mandating that state and local officials generally assist or cooperate with federal immigration enforcement efforts."); *Kearns*,

15

981 F.3d at 204 ("The REAL ID Act does not bar states from continuing to issue driver's licenses that do not comply with the Act. . . . Notably, the REAL ID Act does not require states to verify the lawful status of applicants for noncompliant licenses.") (citations omitted).  Plaintiff fails to directly respond to this argument, and instead contends that generalized notions of cooperative information sharing permeate federal immigration law.  *See, e.g.,* Dkt. No. 24-1 at 21; *see also* Dkt. No. 30 at 10.  As the Supreme Court has made clear, however, "[i]n all cases, the federal restrictions or rights that are said to conflict with state law must stem from either the Constitution itself or a valid statute enacted by Congress." *Kansas v. Garcia*, 589 U.S. 191, 202 (2020).  Indeed, conflict "preemption analysis does not justify a 'freewheeling judicial inquiry into whether a state statute is in tension with federal objectives'; such an endeavor 'would undercut the principle that it is Congress rather than the courts that pre-empts state law.'" *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 607 (2011) (citations omitted).  Similarly, "[i]nvoking some brooding federal interest or appealing to a judicial policy preference' does not show preemption[.]" *Garcia*, 589 U.S. at 202 (citation omitted).

To be sure, a "system of dual sovereignties cannot work without informed, extensive, and cooperative interaction of a voluntary nature between sovereign systems for the mutual benefit of each system." *City of New York v. United States*, 179 F.3d 29, 35 (2d Cir. 1999).  And, as noted earlier, "'[c]onsultation between federal and state officials is an important feature of the immigration system' established by the INA." *New York*, 951 F.3d at 113-14 (quoting *Arizona*, 567 U.S. at 411).  Nonetheless, because Section 1373 "does not mandate that State or local law enforcement authorities cooperate with federal immigration officers[,]" it also does not conflict with the challenged provisions of the Green Light Law.  *Id.* at 109.

The additional statutory provision cited by Plaintiff, 8 U.S.C. § 1357(g)(10), also does not

16

provide a basis for preemption. Dkt. No. 24-1 at 21. This provision simply "gives the States and local governments the option to enter into agreements with federal immigration officials to assist with immigration enforcement." *New York*, 2025 WL 3205011, at *15 (citation omitted). And courts "have consistently found that similar state and local policies, which withhold state cooperation for federal immigration enforcement activities, are not preempted by this provision." *Id.* (collecting cases); *see also Illinois*, 796 F. Supp. 3d at 530-31 (finding that "§ 1357(g)(10) does not mandate any state action" and, in fact, "'leaves room' for State action, as the Supreme Court recognized in *Arizona*. . . . Ultimately, like the other INA provisions discussed, § 1357(g)(10) reflects only Congress's hope that States participate in immigration enforcement") (citation omitted).[7]   Plaintiff's allegations here regarding its desire for unfettered access to DMV information merely concern assistance that "is permissible under the INA, not mandatory," *Illinois*, 796 F. Supp. 3d at 531, and not a "repugnance or conflict [ ] so direct" that Section 1373 and the challenged provisions of the Green Light Law "cannot be reconciled or consistently stand together[,]" *Williams*, 987 F.3d at 198-99 (citation omitted).

In the end, "the possibility that federal enforcement priorities might be upset is not enough to provide a basis for preemption. The Supremacy Clause gives priority to 'the Laws of the United States,' not the criminal law enforcement priorities or preferences of federal officers." *Garcia*, 589 U.S. at 212 (citing U.S. Const. art. VI, cl. 2). Because Plaintiff has failed to carry its "heavy" burden, *N.Y. State Telecomms. Ass'n*, 101 F.4th at 155 (citation omitted), the Court finds that Plaintiff has not plausibly alleged that the challenged provisions of the Green Light Law conflict with federal law, *New York*, 2025 WL 3205011, at *15 ("Here, New York's permissible decision

---

[7] Relatedly, the Complaint has no well-pled allegations to support Plaintiff's assertion that the challenged provisions of the Green Light Law constitute harboring in violation of 8 U.S.C. § 1324. *Id.* at *530 n.19; *see also Kearns*, 981 F.3d at 208-11.

not to assist federal immigration enforcement in its endeavors is not an obstacle to that enforcement effort."). *See also Illinois*, 796 F. Supp. 3d at 531 ("'[T]he choice of a state,' reflected here in the [challenged state laws], 'to refrain from participation cannot be invalid under the doctrine of obstacle preemption where, as here, it retains the right of refusal.'") (first alteration in original) (quoting *McHenry Cnty.*, 44 F.4th at 592).

### C. Intergovernmental Immunity

Finally, the Court addresses the parties' intergovernmental immunity arguments.

#### 1. Direct Regulation

Plaintiff alleges that the Green Light Law's Nondisclosure and Certification Provisions directly regulate the federal government. Dkt. No. 1 at ¶ 52; *see also* Dkt. No. 24-1 at 26-29. Defendants contends that the plain text of these provisions is directed to New York State's Commissioner, and not any federal official or agency. Dkt. No. 10-1 at 30-31. The Court agrees. *See* N.Y. Veh. & Traf. Law § 201(12)(a) ("[T]he commissioner, and any agent or employee of the commissioner, shall not disclose or make accessible in any manner records or information that he or she maintains . . . ."); *id.* at § 201(12)(b) ("The commissioner shall require any person or entity that receives or has access to records or information from the department to certify to the commissioner . . . ."). These provisions directly regulate the dissemination of New York State's DMV information by state officials, and do not directly regulate the federal government.[8]  *Cf. McHenry Cnty.*, 44 F.4th at 593 ("[The challenged provision of the state Act] imposes no direct regulation on any federal official or agency. The challenged provision says only that a 'law

---

[8] Plaintiff's argument in its opposition brief, Dkt. No. 24-1 at 28, that the Notification Provision also directly regulates the federal government is unpersuasive for the same reason, *see* N.Y. Veh. & Traf. Law § 201(12)(a) ("Upon receiving a request for such records or information . . . the commissioner shall, no later than three days after such request, notify the individual about whom such information was requested[.]"), as well as improper, *Lama*, 732 F. Supp. 3d at 223; *supra* n.4.

enforcement agency, law enforcement official, or . . . unit of State or local government' may not enter into or maintain a cooperative agreement for immigration detention. . . . To be sure, a consequence of the Act—*the* intended consequence of the Act—is that the federal government will not be able to use cooperative agreements to house immigration detainees in Illinois State or county facilities. . . . [Nonetheless, t]he Act directly regulates only State and local entities and law enforcement—not the federal government.") (second alteration in original) (citation and footnote omitted).[9]

Plaintiff's arguments to the contrary largely boil down to the possibility that the challenged provisions could, in certain situations, have some incidental effect on federal immigration enforcement. Dkt. No. 24-1 at 26-29. As alleged here, however, any such effect is insufficient to establish direct regulation of the federal government. *Castle*, 2017 WL 6459514, at *13 ("The Supreme Court has noted that '[n]either the Supremacy Clause nor the Plenary Powers Clause bars all state regulation which may touch the activities of the federal Government.'") (alteration in original) (citations omitted). Instead, and as numerous cases have recognized, "the key question is whether state law seeks to improperly 'control' the employee's federal duties, or whether the law only 'might affect incidentally the mode of carrying out the employment—as, for instance, a statute or ordinance regulating the mode of turning at the corners of streets.'" *Texas v. U.S. Dep't of Homeland Sec.*, 123 F.4th 186, 206 (5th Cir. 2024) (citation and footnote omitted).[10] Here,

___

[9] Given that the challenged state law in *McHenry County* expressly "prohibit[ed] State agencies and political subdivisions from contracting with the federal government to house immigration detainees[,]" *id.* at 585, the Court finds unpersuasive Plaintiff's contention that the Green Light Law "goes much further" in interfering with federal immigration enforcement, Dkt. No. 24-1 at 29. In addition, Plaintiff's reliance on other authority, *id.* at 29, that "is factually distinct and involves local government acting as review boards overseeing federal decisions[,]" *Illinois*, 796 F. Supp. 3d at 535, is also unavailing.

[10] Plaintiff's arguments regarding potential liability under the Certification Provision are unpersuasive. *See, e.g.,* Dkt. No. 24-1 at 26-27. To the extent that the Complaint contains well-

19

Defendants are correct that the challenged provisions of the Green Light Law do not improperly regulate the ability of federal immigration authorities to carry out enforcement activities in New York State.  Dkt. No. 30 at 13.

Additionally, and as the Second Circuit has observed, New York State's DMV information relating to standard license applicants remains available to federal immigration authorities through "a lawful court order or judicial warrant." *Kearns*, 981 F.3d at 205 (citing N.Y. Veh. & Traf. Law § 201(12)(a)); *see also Illinois*, 796 F. Supp. 3d at 535 ("Contrary to the United States's argument, the [challenged state laws] here do not comparably regulate ICE operations . . . . Importantly, they leave open ICE's ability to obtain and present a criminal warrant, thereby receiving the assistance and information it seeks.").  The Green Light Law also contemplates the provision of New York State's DMV information to federal authorities in numerous other situations, including "as required for the commissioner to issue or renew a driver's license or learner's permit that meets federal standards for identification, as necessary for an individual seeking acceptance into a trusted traveler program, or to facilitate vehicle imports and/or exports[.]"  N.Y. Veh. & Traf. Law § 201(12)(a).

For these reasons, Plaintiff has not plausibly alleged that any challenged provision of the Green Light Law unlawfully regulates the federal government.

### 2.  Discrimination

Finally, Plaintiff alleges that the Nondisclosure Provision constitutes unlawful

---

pled allegations regarding such liability, "[i]t is well settled that generally applicable state laws can apply to federal agents.  As the Supreme Court has explained, '[o]f course an employee of the United States does not secure a general immunity from state law while acting in the course of his employment.'" *Texas*, 123 F.4th at 206 (second alteration in original) (citation and footnote omitted); *see also New York*, 2025 WL 3205011, at *12 n.7 ("Questions about how [the challenged state law] would apply in particular situations, and whether federal officials may be immune from liability in certain cases . . . do not render the statute facially invalid.") (citation omitted).

discrimination against the federal government. Dkt. No. 1 at ¶ 55. Defendants contend that the challenged provision applies equally to private and governmental actors, and thus does not discriminate against the federal government. Dkt. No. 10-1 at 31-32. The Court again agrees with Defendants.

The Supreme Court has said that "a state law discriminates against the Federal Government or its contractors if it 'single[s them] out' for less favorable 'treatment,' . . . or if it regulates them unfavorably on some basis related to their governmental 'status[.]'" *Washington*, 596 U.S. at 839 (first alteration in original) (citations omitted). Plaintiff's allegations fail to establish such discrimination. "The State does not discriminate against the Federal Government and those with whom it deals unless it treats someone else better than it treats them." *Washington v. United States*, 460 U.S. 536, 544-45 (1983) (footnote omitted). But the Complaint fails to identify any such comparator, *see, e.g.,* Dkt. No. 1 at ¶¶ 54-57, and "[d]ifferential treatment is critical to a discrimination-based intergovernmental immunity claim[,]" *McHenry Cnty.*, 44 F.4th at 594 (citations omitted).

Plaintiff's conclusory argument in its opposition brief, Dkt. No. 24-1 at 30, that all other individuals and entities are treated more favorably than the federal government is unpersuasive. *New York*, 2025 WL 3205011, at *17 ("This is where the United States' claim fails. The challenged policies certainly affect the federal government as the primary enforcer of civil immigration law. The policies specifically prohibit the sharing of certain information with federal immigration authorities, except where otherwise required by law. But the United States never identifies a comparator."); *McHenry Cnty.*, 44 F.4th at 594 ("[Plaintiffs] cannot identify any actors 'similarly situated' to the federal government that receive more favorable treatment under the [challenged state law]."). New York's Vehicle and Traffic Law also contains numerous

restrictions regarding the disclosure of DMV information, *see, e.g.,* N.Y. Veh. & Traf. Law §§ 201(8)-(10), beyond the restriction challenged by Plaintiff, *see id.* at § 201(12). *North Dakota v. United States*, 495 U.S. 423, 438 (1990) ("[I]n analyzing the constitutionality of a state law, it is not appropriate to look to the most narrow provision addressing the Government or those with whom it deals. A state provision that appears to treat the Government differently on the most specific level of analysis may, in its broader regulatory context, not be discriminatory.") (plurality opinion). And "[t]he mere fact that the [challenged state law] touches on an exclusively federal sphere is not enough to establish discrimination." *McHenry Cnty.*, 44 F.4th at 594 (citation omitted).

Finally, the challenged portion of the Green Light Law[11] expressly provides for disclosure to the federal government in numerous situations, vitiating Plaintiff's allegations. *See* N.Y. Veh. & Traf. Law § 201(12)(a); *see also Kearns*, 981 F.3d at 205.

In sum, Plaintiff has failed to plausibly allege that any challenged provision of the Green Light Law unlawfully discriminates against the federal government.

## V.   CONCLUSION

Because Plaintiff has failed to state any claim against any Defendant, the Court grants Defendants' Motion.[12]

---

[11] Plaintiff's argument in its opposition brief, Dkt. No. 24-1 at 29-32, that the Certification and Notification Provisions are also discriminatory is unpersuasive for similar reasons, and again improper. *Lama*, 732 F. Supp. 3d at 223; *supra* nn.4, 8. Plaintiff's argument also fails because the Certification Provision concerns "any person or entity that receives or has access to records or information from the department[,]" N.Y. Veh. & Traf. Law § 201(12)(b), while the Notification Provision concerns any "individual about whom such information was requested," *id.* § 201(12)(a), and thus neither discriminate against the federal government.

[12] Plaintiff's cross-motion for summary judgment, Dkt. No. 24, is accordingly denied as moot. Finally, because the Court concludes that Plaintiff has failed to state any preemption or intergovernmental immunity claim, it does not reach the parties' Tenth Amendment arguments.

Accordingly, the Court hereby

**ORDERS** that the unopposed motions for leave to file *amicus* briefs, Dkt. Nos. 17, 29, are **GRANTED**; and the Court further

**ORDERS** that Defendants' motion to dismiss, Dkt. No. 10, is **GRANTED**, as set forth in Section IV of this Memorandum-Decision and Order; and the Court further

**ORDERS** that Plaintiff's Complaint, Dkt. No. 1, is **DISMISSED**; and the Court further

**ORDERS** that Plaintiff's cross-motion for summary judgment, Dkt. No. 24, is **DENIED as moot;** and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules, and close the case.

**IT IS SO ORDERED.**

Dated: December 23, 2025
      Albany, New York

Anne M. Nardacci
U.S. District Judge

23