# 26-387

# United States Court of Appeals for the Second Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

v.

STATE OF NEW YORK, KATHLEEN HOCHUL, Governor of New York, in her Official Capacity, LETITIA JAMES, Attorney General of New York, in her Official Capacity, MARK J.F. SCHROEDER, Commissioner of the New York State Department of Motor Vehicles, in his Official Capacity,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of New York

## BRIEF FOR APPELLEES

|  |  |
|---|---|
|  | LETITIA JAMES |
|  | *Attorney General* |
|  | *State of New York* |
| BARBARA D. UNDERWOOD | Attorney for Appellees |
| *Solicitor General* | 28 Liberty Street |
| JEFFREY W. LANG | New York, New York 10005 |
| *Deputy Solicitor General* | (212) 416-6325 |
| PHILIP J. LEVITZ |  |
| *Senior Assistant Solicitor General* |  |
| *of Counsel* | Dated: July 29, 2026 |

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................................iii

PRELIMINARY STATEMENT.......................................................................1

ISSUES PRESENTED ......................................................................................3

STATEMENT OF THE CASE ..........................................................................4

    A.   Legal Background .......................................................................4

    B.   New York's Green Light Law ....................................................6

    C.   Procedural Background ...........................................................15

STANDARD OF REVIEW..............................................................................18

SUMMARY OF ARGUMENT .......................................................................18

ARGUMENT ..................................................................................................21

POINT I

FEDERAL LAW DOES NOT PREEMPT THE GREEN LIGHT LAW'S
CHALLENGED PROVISIONS ...............................................................................24

    A.   The Nondisclosure and Certification Provisions Are Not
         Preempted by 8 U.S.C. § 1373. .............................................25

        1.   The nondisclosure and certification provisions do
             not implicate information covered by § 1373. .................25

        2.   Section 1373 is not a valid preemption provision. ..........32

    B.   The Notice Provision Is Not Conflict Preempted. ..................34

    C.   Finding the Challenged Provisions to Be Preempted
         Would Conflict with the Tenth Amendment's
         Anticommandeering Principle.................................................42

i

**Page**

POINT II

THE GREEN LIGHT LAW'S CHALLENGED PROVISIONS DO NOT
VIOLATE THE INTERGOVERNMENTAL IMMUNITY DOCTRINE ................... 45

    A.   The Challenged Provisions Do Not Discriminate Against
        the Federal Government. ....................................................... 46

    B.   The Certification Provision Regulates State Information,
        Not the Manner in Which the Federal Government
        Conducts Its Operations. ...................................................... 50

CONCLUSION ................................................................................. 55

# TABLE OF AUTHORITIES

**Cases**                                                           **Page(s)**

*Amara v. Cigna Corp.*,
53 F.4th 241 (2d Cir. 2022)......................................................46

*Arizona v. California*,
283 U.S. 423 (1931).................................................................52

*Arizona v. United States*,
567 U.S. 387 (2012)...................................................... 6, 27, 47

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................18

*Bradley v. Public Utils. Comm'n of Ohio*,
289 U.S. 92 (1933)...................................................................22

*California Coastal Comm'n v. Granite Rock Co.*,
480 U.S. 572 (1987).................................................................27

*Chamber of Com. of U.S. v. Whiting*,
563 U.S. 582 (2011)........................................................... 31, 35

*City & Cnty. of San Francisco v. Sessions*,
349 F. Supp. 3d 924 (N.D. Cal. 2018)....................................32

*City of Chicago v. Sessions*,
888 F.3d 272 (7th Cir. 2018).................................................14

*City of New York v. United States*,
179 F.3d 29 (2d Cir. 1999) .............................................. 11, 43

*Colorado v. U.S. Department of Just.*,
455 F. Supp. 3d 1034 (D. Colo. 2020) ...................................32

*CoreCivic, Inc. v. Governor of N.J.*,
145 F.4th 315 (3d Cir. 2025).................................................53

*County of Ocean v. Grewal*,
475 F. Supp. 3d 355 (D.N.J. 2020)........................................32

iii

| **Cases** | **Page(s)** |
|---|---|

*Dawson v. Steager,*
586 U.S. 171 (2019).................................................................49

*DeCanas v. Bica,*
424 U.S. 351 (1976).................................................................23

*English v. General Elec. Co.,*
496 U.S. 72 (1990)................................................................26-27

*Geo Grp., Inc. v. Inslee,*
151 F.4th 1107 (9th Cir. 2025) ...........................................53

*Geo Grp., Inc. v. Newsom,*
50 F.4th 745 (9th Cir. 2022) .........................................23, 54

*Golb v. Attorney Gen. of N.Y.,*
870 F.3d 89 (2d Cir. 2017) ..................................................42

*Gregory v. Ashcroft,*
501 U.S. 452 (1991)........................................................4, 22-23

*Gross v. Rell,*
585 F.3d 72 (2d Cir. 2009) ............................................34, 50

*Hancock v. Train,*
426 U.S. 167 (1976).................................................................52

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,*
725 F.3d 65 (2d Cir. 2013) ............................................34, 37

*Kansas v. Garcia,*
589 U.S. 191 (2020).................................................................35

*Kearns v. Cuomo,*
415 F. Supp. 3d 319 (W.D.N.Y. 2019)................................2

*Kearns v. Cuomo,*
981 F.3d 200 (2d Cir. 2020) .................................................38

iv

| Cases | Page(s) |
|---|---|

*Mackey v. Montrym,*
443 U.S. 1 (1979)......................................................................22

*Mayo v. United States,*
319 U.S. 441 (1943)..................................................................52

*McHenry Cnty. v. Raoul,*
44 F.4th 581 (7th Cir. 2022) ........................................... 39, 48, 51, 53

*Melendez v. Sirius XM Radio, Inc.,*
50 F.4th 294 (2d Cir. 2022)......................................................18

*Merola v. Cuomo,*
427 F. Supp. 3d 286 (N.D.N.Y. 2019) ....................................2

*Metropolitan Life Ins. Co. v. Massachusetts,*
471 U.S. 724 (1985)..................................................................22

*Murphy v. National Collegiate Athletic Ass'n,*
584 U.S. 453 (2018)........................................................ 19, 32, 42-43

*National Fed'n of Indep. Bus. v. Sebelius,*
567 U.S. 519 (2012)................................................................4-5

*New York City Env't Just. All. v. Giuliani,*
214 F.3d 65 (2d Cir. 2000) ....................................................46

*New York Pet Welfare Ass'n v. City of New York,*
850 F.3d 86 79, 86 (2d Cir. 2017) ........................................37

*New York State Telecomms. Ass'n v. James,*
101 F.4th 135 (2d Cir. 2024)..................................... 18, 23, 35-36, 39

*New York v. Department of Justice,*
951 F.3d 84 (2d Cir. 2020) .......................................... 33, 43

*New York v. United States,*
505 U.S. 144 (1992)..................................................................5

| Cases | Page(s) |
|---|---|

*North Dakota v. United States*,
495 U.S. 423 (1990)........................................................ 21, 45, 47, 51-52

*Nwauzor v. GEO Grp., Inc.*,
127 F.4th 750 (9th Cir. 2025) ..................................................... 53

*Ocean Cnty. Bd. of Comm'rs v. Attorney Gen.*,
8 F.4th 176 (3d Cir. 2021)....................................................... 32-33

*Oregon v. Trump*,
406 F. Supp. 3d 940 (D. Or. 2019) ................................................. 32

*Printz v. United States*,
521 U.S. 898 (1997)................................................................. 5

*Texas v. United States Dep't of Homeland Security*,
123 F.4th 186 (2024) ............................................................. 53

*United States v. California*,
173 F.4th 1060 (9th Cir. 2026) .................................................... 54

*United States v. California*,
921 F.3d 865 (9th Cir. 2019)...................................... 29-31, 39, 44, 48

*United States v. City of Boston*,
No. 25-cv-12456, 2026 WL 1493706 (D. Mass. May 28, 2026)........... 28

*United States v. City of Los Angeles*,
No. 25-cv-5917, 2026 WL 1790971 (C.D. Cal. June 20, 2026) ........... 28

*United States v. Illinois*,
796 F. Supp. 3d 494 (N.D. Ill. 2025)...................................... 27-28, 32

*United States v. Minnesota*,
No. 25-cv-3798, 2026 WL 2085701 (D. Minn. July 20, 2026)............. 32

*United States v. New York*,
810 F. Supp. 3d 329 (N.D.N.Y. 2025) ...................................... 28, 32

**Cases** **Page(s)**

*United States v. Town of Windsor,*
765 F.2d 16 (2d Cir. 1985) ................................................................52

*United States v. Washington,*
596 U.S. 832 (2022).........................................................................47

*Virginia Uranium, Inc. v. Warren,*
587 U.S. 761 (2019).........................................................................35

*Washington v. United States,*
460 U.S. 536 (1983).........................................................................47

*Whalen v. Roe,*
429 U.S. 589 (1977).........................................................................22

*Younger v. Harris,*
401 U.S. 37 (1971)...........................................................................21

**Constitution**

U.S. Const. amend. X ...........................................................................5

**Federal Laws**

REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 302.....................6-7

5 U.S.C. § 552a ............................................................................12-13

8 U.S.C.
§ 1324 ..........................................................................................37
§ 1367 ..........................................................................................30
§ 1373 ................................................................................. passim
§ 1644 .......................................................................................6, 25

12 U.S.C. § 3405 .................................................................................12

15 U.S.C. § 1681b ...............................................................................13

**Federal Laws**                                           **Page(s)**

18 U.S.C.
§ 2703 ...................................................................................... 13
§ 2721 ................................................................................... 12-13
§ 2723 ...................................................................................... 13

**State Laws**

Cal. Veh. Code § 12800.7(b) ................................................... 14

Ch. 37, 2019 McKinney's N.Y. Laws 214 ................................. 7

N.Y. Vehicle and Traffic Law
§ 201 .................................................................................. passim
§ 502 ..................................................................... 6-9, 19, 26
§ 508 ........................................................................................ 9

**Federal Regulations**

6 C.F.R. § 37.71 ........................................................................ 7

22 C.F.R. § 41.2 ........................................................................ 7

77 Fed. Reg. 17144 (Mar. 23, 2012) ..................................... 13

**State Regulations**

15 N.Y.C.R.R. § 3.9 .................................................................. 8

**Miscellaneous Authorities**

Cal. Senate Rules Comm., Senate Floor Analyses for SB 244 (Aug.
31, 2018), https://leginfo.legislature.ca.gov/faces/billAnalysis
Client.xhtml?bill_id=201720180SB244 .............................. 14

H.R. Rep. No. 104-725 (1996) .............................................. 31

N.Y. Assembly Debates on Bill A3675B (June 12, 2019) ............. 8, 11-12

N.Y. Senate Debate on Bill A3675B (June 17, 2019) ........................... 12

## Miscellaneous Authorities                                    Page(s)

N.Y. State Senate, *Senate Passes Driver's License Access and Privacy Act (Green Light NY)* (June 17, 2019), https://www.nysenate.gov/newsroom/press-releases/2019/senate-passes-drivers-license-access-and-privacy-act-green-light-ny ................................................................. 8

National Immigr. L. Ctr, *Protecting State Driver's License Information* (Aug. 2025), https://media.nilc.org/wp-content/uploads/2025/08/protecting-drivers-license-information-2025-08.pdf ................................................................ 14

S. Rep. No. 104-249 (1996) ................................................................ 31

# PRELIMINARY STATEMENT

In this action, plaintiff-appellant United States of America seeks to enjoin enforcement of three provisions of the New York State Driver's License Access and Privacy Act, commonly known as the Green Light Law. That law, which directs the Department of Motor Vehicles (DMV) to issue driver's licenses without regard to citizenship or immigration status, was enacted to promote the State's sovereign interests in public safety and economic growth by increasing the number and percentage of licensed and insured drivers on the State's roads.

The challenged provisions concern the confidentiality of driver's license applicant information and ensure that those newly eligible for driver's licenses under the law are not deterred from applying for them because of concerns that their information will be turned over to immigration authorities. The challenged provisions do so by barring disclosure of personal information from DMV to immigration authorities except as required by law; requiring DMV to notify individuals if their personal information is to be disclosed to immigration authorities; and requiring anyone obtaining access to personal information from DMV to certify that

such information will not be used for unauthorized purposes. *See* N.Y. Vehicle and Traffic Law (V.T.L.) § 201(12)(a)-(b).

Plaintiff claims that these provisions of the Green Light Law are invalid under the Supremacy Clause of the U.S. Constitution, either because they are preempted by federal law or because they violate the intergovernmental immunity doctrine. Defendants moved to dismiss. The U.S. District Court for the Northern District of New York (Nardacci, J.) granted defendants' motion to dismiss, finding that the challenged provisions are valid exercises of the State's traditional police powers and do not violate the Supremacy Clause.

For the reasons set forth below, this Court should affirm.[1] Indeed, finding these provisions barred by the Supremacy Clause would force the State to provide its own information and records to assist in federal immigration enforcement, against the State's considered judgment concerning

---

[1] Several years ago, two district courts, and this Court on appeal, rejected on threshold grounds earlier Supremacy Clause challenges to the Green Light Law filed by county clerks responsible for DMV licensing in their respective counties. *See Kearns v. Cuomo*, 415 F. Supp. 3d 319 (W.D.N.Y. 2019) (dismissed for lack of standing), *aff'd*, 981 F.3d 200 (2d Cir. 2020); *Merola v. Cuomo*, 427 F. Supp. 3d 286 (N.D.N.Y. 2019) (dismissed for lack of capacity), *appeal dismissed*, No. 20-160 (2d Cir. Feb. 4, 2020).

its own sovereign interests. The thrust of plaintiff's position is that the federal government can overrule any state law that might make its immigration enforcement marginally more difficult, regardless of the State's own sovereign interests at stake. That is not the law. Although the federal government may be frustrated at its inability to commandeer the State to provide information that will assist in immigration enforcement, that inability is a necessary consequence of federalism.

## ISSUES PRESENTED

1. Did the district court properly conclude that plaintiff failed to state a plausible claim that the challenged provisions of the Green Light Law are preempted, when no federal law precludes those provisions?

2. Did the district court properly conclude that plaintiff failed to state a plausible claim that the challenged provisions of the Green Light Law violate the intergovernmental immunity doctrine?

3

## STATEMENT OF THE CASE

### A.    Legal Background

Federalism is a fundamental principle of the U.S. Constitution, which maintains the States as separate sovereigns and implements the Framers' understanding that the powers of the federal government "'are few and defined,'" while the powers remaining with the States "'are numerous and indefinite.'" *Gregory v. Ashcroft*, 501 U.S. 452, 458 (1991) (quoting The Federalist No. 45, at 292 (James Madison) (Clinton Rossiter ed., 1961)). Federalism ensures that the State's powers "'extend to all the objects which, in the ordinary course of affairs, concern the lives, liberties, and properties of the people, and the internal order, improvement, and prosperity of the State.'" *Id.* (quoting *The Federalist* No. 45, *supra*, at 293 (James Madison)). Federalism's respect for state sovereignty "secures to citizens the liberties that derive from the diffusion of sovereign power." *National Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 536 (2012) (quotation marks omitted). Power diffused to state governments "also serves as a check on the power of the Federal Government: By denying any one government complete jurisdiction over all the concerns of public

life, federalism protects the liberty of the individual from arbitrary power." *Id.* (quotation marks omitted).

The Tenth Amendment implements the Constitution's federalism guarantee by providing that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. The Supreme Court has interpreted the Tenth Amendment to entail an anticommandeering principle that prohibits Congress from compelling States to administer federal regulatory schemes, *see New York v. United States*, 505 U.S. 144, 188 (1992), or from conscripting state and local officers and resources to assist in such schemes, *see Printz v. United States*, 521 U.S. 898, 935 (1997). These prohibitions apply "[n]o matter how powerful the federal interest involved." *See New York*, 505 U.S. at 178.

The federal regulatory scheme relevant to this case is civil immigration enforcement. The federal government has enacted extensive legislation to regulate admissibility and removability of noncitizens. However, no provision of federal immigration law imposes an affirmative obligation on States. Indeed, federal immigration law severely limits the circumstances in which States may participate in federal immigration

5

enforcement, given the "significant complexities involved in enforcing federal immigration law," and the attendant need for specialized training. *See Arizona v. United States*, 567 U.S. 387, 408-09 (2012). Plaintiff cites only one provision of federal immigration law that governs state conduct, which provides that States and their officers may not prohibit or restrict a "government entity or official from sending to, or receiving from, [federal immigration authorities] information regarding the citizenship or immigration status, lawful or unlawful, of any individual." 8 U.S.C. § 1373(a); *see id.* § 1644.

## B.    New York's Green Light Law

New York's DMV—like many States'—issues multiple types of driver's licenses. Some, referred to as "standard" licenses, are available to anyone who satisfies the state-law requirements for proof of identity, age, and fitness. *See* V.T.L. § 502(1), (8). Standard licenses may be used only for state-law purposes. Other licenses are available only to those who satisfy additional federal-law requirements, and may be used for federal-law purposes, like gaining entry to federal facilities, boarding federally regulated commercial aircraft, and certain international travel. *See* REAL ID Act of 2005, Pub. L. No. 109-13, §§ 201(3), 202(c), 119 Stat. 302 (codi-

fied at 49 U.S.C. § 30301 note); 22 C.F.R. § 41.2(a)(6).[2] Federal law specifically recognizes that States may issue licenses to be used only for state-law purposes that do not satisfy federal requirements. REAL ID Act § 202(d)(11); 6 C.F.R. § 37.71(a).

In 2019, New York enacted the Driver's License Access and Privacy Act, commonly known as the Green Light Law, to amend the V.T.L.'s provisions related to the issuance of standard driver's licenses. *See* Ch. 37, 2019 McKinney's N.Y. Laws 214. Recognizing the public safety and economic benefits of increasing the number and percentage of licensed and insured drivers on the State's roads, the amendments facilitated DMV's issuance of standard licenses to all qualified state residents, that is, all residents of demonstrated legal age and fitness, regardless of citizenship or immigration status. *See* V.T.L. § 502(1), (4), (8)(b). The legislative history of the Green Light Law underscores the Legislature's understanding that permitting more state residents to become licensed drivers would encourage more drivers to complete the safety training and

---

[2] New York's DMV also issues commercial driver's licenses, which are not at issue in the Green Light Law or this litigation.

7

testing required for a license,[3] reduce hit-and-run accidents,[4] generate additional tax and DMV revenues,[5] and lower uninsured motorist insurance premiums for all drivers by reducing the number of uninsured drivers on New York's roads.[6]

To implement its goals, the Green Light Law expanded the types of acceptable proof of identity and age for standard licenses by directing DMV to accept, as primary proofs, foreign documents including foreign passports and driver's licenses. *Id.* § 502(1). The Legislature also provided that, in lieu of a social security number, *see* 15 N.Y.C.R.R.

---

[3] *See, e.g.,* N.Y. Assembly Debates on Bill A3675B, at 196, 210, 216 (June 12, 2019) (citing safety benefits).

[4] *See, e.g., id.* at 109 (noting reduced hit-and-runs in California and New Mexico after passing similar laws); N.Y. State Senate, *Senate Passes Driver's License Access and Privacy Act (Green Light NY)* (June 17, 2019) (highlighting that, in Connecticut, since enacting similar law, "hit-and-run crashes have dropped 9% between 2016 and 2018").

[5] *See, e.g.,* N.Y. Assembly Debates on Bill A3675B, *supra,* at 113 (June 12, 2019) (citing New York City Comptroller report that licensing undocumented individuals would generate $9.6 million in license fees, boost auto sales by nearly 3 percent, and generate $4.2 million in registration and title fees); *id.* at 195-96 (citing estimates that Law will generate $50-57 million in additional annual revenues for the State).

[6] *See, e.g., id.* at 115-16 (discussing anticipated reduction in insurance premiums); *id.* at 193 (referencing studies that predict lower insurance premiums).

8

§ 3.9(a), applicants may submit an affidavit attesting that they have not been issued a social security number, *see* V.T.L. § 502(1). Because it is irrelevant to the license determination, the Legislature further prohibited the collection and retention of information pertaining to citizenship or immigration status, social security number eligibility, and the type of documents used by applicants to prove age or identity for standard licenses. *See id.* § 502(8)(c)-(d), 8(e)(ii).

The Legislature also strengthened the confidentiality protections for the personal information maintained by DMV about all license holders and applicants. *Id.* § 201(8)-(12). Specifically, the Legislature provided that certain personal information and records maintained by DMV are not "public record[s]," and may not be disclosed except to the subject of the information, or under certain circumstances as required by law. *See id.* §§ 201(8)-(10), 508(3).

While strengthening confidentiality protections across the board, the Legislature established certain protections specifically to address concerns that information provided to DMV by those newly eligible for licenses could be used against them by immigration authorities.

9

*First*, the Legislature prohibited DMV from disclosing its information or records to an agency that primarily enforces immigration law, absent a court order or judicial warrant, except in limited circumstances such as when necessary to issue a license to be used for federal-law purposes (the "nondisclosure provision"). *See id.* § 201(12)(a).[7]

*Second*, the Legislature required DMV, within three days of receiving a request for information or records from an agency that primarily enforces immigration law, to notify the subject of the request and identify the requesting agency (the "notice provision"). *Id.* § 201(12)(a).

*Third*, the Legislature required that the DMV commissioner require that any person or entity that receives or has access to information or records from DMV, certifies, before such receipt or access, that they will not use the information for civil immigration purposes, or disclose the information to an agency that primarily enforces immigration law unless that disclosure is pursuant to a cooperative arrangement between city, state, and federal agencies that does not enforce immigration law (the

---

[7] The statute defines an agency that primarily enforces immigration law to "include, but not be limited to, United States immigration and customs enforcement and United States customs and border protection, and any successor agencies having similar duties." V.T.L. § 201(12)(c).

10

"certification provision"). *See id.* § 201(12)(b). Those who violate a certification to which they have subscribed may be subject to criminal penalties. *See id.* The certifying person or entity also must keep records of any use or disclosure to an immigration enforcement agency of DMV information for five years. *See id.*

These confidentiality provisions were intended not only to protect sensitive personal information obtained by the State, but also to ensure that individuals eligible for driver's licenses under the Green Light Law are not deterred from obtaining them—thus advancing the State's goal of increasing the number and percentage of licensed and insured drivers on the State's roads. As this Court has observed, "[t]he obtaining of pertinent information" for many state functions may "be difficult or impossible if some expectation of confidentiality is not preserved." *City of New York v. United States*, 179 F.3d 29, 36 (2d Cir. 1999). The Legislature recognized this principle when enacting the Green Light Law.

As the Assembly sponsor explained in response to questions about the confidentiality provisions, those provisions were intended to advance public safety goals by increasing the number of people who are willing to come out of the shadows and "be a part of our licensing." N.Y. Assembly

Debate, Bill A. 3675B at 146-47 (June 12, 2019); *see also id.* at 143. Similarly, the Senate sponsor explained in response to questions about the provisions that they provide "privacy protections[] for undocumented immigrants so that they feel a sense of comfort obtaining these licenses." N.Y. Senate Debate on Bill A3675B, at 5930-31 (June 17, 2019). As to the notice provision specifically, the Senate sponsor added that it allows the Green Light Law's expanded licensing scheme "to be effective" by making license applicants "confident that the information they're providing is going to remain private." *Id.* at 5968.

The Green Light Law's confidentiality provisions track similar provisions in federal, state, and local law. For instance, federal law in many circumstances limits disclosure of personal information from state motor vehicle records, *see* 18 U.S.C. § 2721(a), as well as the federal government's own records, *see* 5 U.S.C. § 552a(b). Similar to the Green Light Law's notice provision, federal law also commonly requires notice to individuals whose personal information the government may disclose when such disclosure is made. *See, e.g.,* 5 U.S.C. § 552a(o)(1)(D) (notice required to federal program or job applicants that their personal information may be shared with state or federal agencies); 12 U.S.C. § 3405(2) (notice

12

required to subject of government request for financial institution's records), 18 U.S.C. § 2703(b)(1)(B) (notice required to subject of government request for electronic communication service records). And, similar to the Green Light Law's certification provision, the federal government commonly regulates the disclosure of personal information, such as through certification and recordkeeping requirements, including with potential criminal penalties for violation. *See, e.g.*, 5 U.S.C. § 552a(b), (c)(1)-(2), (i) (recordkeeping required for disclosures of personal information held by federal government); 15 U.S.C. § 1681b(b)(1) (certification required from recipients of credit reports); 18 U.S.C. §§ 2721(c), 2723 (recordkeeping required for disclosures of information from state motor vehicle records). Like the Green Light Law, federal law also has "codif[ied] the longstanding policy" of restricting inquiries and disclosures about immigration status that are unnecessary to program eligibility determinations, "to avoid deterring enrollment of eligible applicants." *E.g.*, 77 Fed. Reg. 17144, 17164-65 (Mar. 23, 2012) (codified at 42 C.F.R. § 435.907(e)(1)).

Many state and local laws limit collection and disclosure of personal information for similar reasons, i.e., to encourage those "who are here

13

unlawfully—or who have friends or family members here unlawfully" to come forward to obtain driver's licenses, report crimes, serve as witnesses, seek healthcare, or otherwise participate in government programs for which they are eligible without fear that doing so "will bring the scrutiny of the federal immigration authorities." *See City of Chicago v. Sessions*, 888 F.3d 272, 280 (7th Cir. 2018), *vacated in part on other grounds*, No. 17-2991, 2018 WL 4268817 (7th Cir. June 4, 2018). Such provisions are common in the many state laws that, like the Green Light Law, permit the issuance of driver's licenses irrespective of immigration status.[8] Indeed, one State that already permitted the issuance of driver's licenses irrespective of immigration status subsequently amended its law, *see* Cal. Veh. Code § 12800.7(b), to strengthen confidentiality protections, largely in response to "evidence that some [residents] are avoiding or withdrawing from state and local government programs in order to protect the privacy of their personal information."[9]

---

[8] *See* National Immigr. L. Ctr, *Protecting State Driver's License Information* (Aug. 2025) (identifying numerous state laws with disclosure, notice, and/or certification provisions similar to New York's).

[9] *See* Cal. Senate Rules Comm., Senate Floor Analyses for SB 244, at 6 (Aug. 31, 2018).

14

## C.    Procedural Background

More than five years after the Green Light Law was enacted, the United States filed the complaint in this action in February 2025, in the U.S. District Court for the Northern District of New York, claiming for the first time that the Green Light Law's nondisclosure, notice, and certification provisions facially violate the U.S. Constitution's Supremacy Clause. (Joint Appendix (J.A.) 8-23.) The complaint named as defendants the State of New York, Governor Kathy Hochul, Attorney General Letitia James, and DMV Commissioner Mark J.F. Schroeder, in their respective official capacities. (J.A. 11-12.)

The United States' complaint alleges that the challenged provisions are expressly preempted by 8 U.S.C. § 1373 or conflict preempted by the federal immigration laws more generally (Count I). Compl. (J.A. 20-21.) The complaint also alleges that certain of these provisions unconstitutionally seek to regulate (Count II) or discriminate against (Count III) the federal government, in violation of the intergovernmental immunity doctrine. (J.A. 21-22.) The complaint seeks a declaration that the Green Light Law is invalid in its entirety, and an injunction barring the Law's enforcement. (J.A. 22-23.)

15

Defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and the district court (Nardacci, J.) granted the motion. (J.A. 27-49.)[10] The court held that the challenged provisions are not preempted, either expressly by 8 U.S.C. § 1373, or impliedly through conflict preemption (J.A. 36-44)—even without applying the presumption against preemption of state police-power regulation, which the court did not reach (J.A. 36 n.5). The court explained that § 1373 governs only "citizenship or immigration status" information, which DMV may not collect or retain under the Green Light Law. (J.A. 36-39.) The court further explained that there is no irreconcilable conflict between the challenged provisions of the Green Light Law and the provisions of federal law identified by plaintiff, thus precluding conflict preemption. And even if the challenged provisions made the federal government's job of immigration enforcement more difficult, that fact would not establish preemption—or else the State could be commandeered into assisting

---

[10] Plaintiff also cross-moved for summary judgment, but that motion was denied as moot when the court granted the motion to dismiss. (J.A. 49.)

16

federal immigration enforcement to the detriment of its own sovereign prerogatives, in violation of the Tenth Amendment. (J.A. 39-44.)

The district court also held that the challenged provisions are not barred by the intergovernmental immunity doctrine. The court explained that the nondisclosure provision does not unconstitutionally discriminate against the federal government because no similarly situated comparator is treated better than the federal government. (J.A. 46-48.) The court added that the challenged provisions do not directly regulate the federal government; rather, they regulate dissemination of DMV's information. (J.A. 44-46.)[11]

---

[11] In addition, the court held that plaintiff lacks standing against defendants Hochul and James because the complaint does not allege that they enforce the challenged provisions of the Green Light Law. (J.A. 33-35.) Plaintiff expressly does not challenge that correct holding on appeal. Br. 10 n.2.

17

## STANDARD OF REVIEW

This Court reviews de novo legal issues underlying grants of motions to dismiss pursuant to Rule 12(b)(6). *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 298 (2d Cir. 2022). To survive such a motion to dismiss, the complaint must contain sufficient factual allegations to state a facially plausible claim for relief, i.e., to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## SUMMARY OF ARGUMENT

I. No federal law preempts the challenged provisions of the Green Light Law—much less with the necessary "clear and manifest" showing of preemptive intent required for a federal law to displace state police-power regulations like the challenged provisions. *See, e.g.*, *New York State Telecomms. Ass'n v. James*, 101 F.4th 135, 148 (2d Cir. 2024) (quotation marks omitted).

Plaintiff argues that 8 U.S.C. § 1373 expressly preempts the Green Light Law's nondisclosure and certification provisions, but it is mistaken. This provision bars States from restricting the sharing of information "regarding . . . citizenship or immigration status" with federal immigra-

18

tion authorities. But the Green Light Law's nondisclosure and certification provisions do not implicate citizenship or immigration status information; in fact, the Green Light law forbids the State from collecting or maintaining such information in the first instance. *See* V.T.L. § 502(8)(c), (d), (e)(ii). And plaintiff's contention that § 1373 reaches a much broader range of information, such as home addresses, is contrary to the plain language of the statute and the uniform holding of numerous courts interpreting that provision. In any event, the Supreme Court has explained that federal law has preemptive effect only when the law applies equally to state and private actors. *See Murphy v. National Collegiate Athletic Ass'n*, 584 U.S. 453, 479 (2018). But § 1373 does not regulate private actors. It thus cannot have preemptive effect, as several courts have held.

Nor does plaintiff point to any provision of federal law that conflicts with the Green Light Law's notice provision. That provision merely requires notice to individuals whose personal information may be disclosed to immigration authorities, allowing those individuals to raise any objections to the disclosure before facing severe immigration consequences. Such a provision is readily reconcilable with the federal laws

19

plaintiff cites, which nowhere address the notice that States may provide to the subjects of information requests.

Moreover, the doctrine of constitutional avoidance cautions against adopting an interpretation of federal law that would compel the State to share its own information and records to assist federal immigration enforcement. Such a result would flout the Tenth Amendment's anticommandeering principle.

II. The challenged provisions of the Green Light Law also are consistent with the intergovernmental immunity doctrine. As with preemption, courts do not lightly conclude that the intergovernmental immunity doctrine bars state laws.

Here, plaintiff waived its claims that the notice and certification provisions unconstitutionally discriminate against the federal government in violation of that doctrine by not raising them in its complaint. Regardless, none of the challenged provisions unconstitutionally discriminate, because they do not treat any similarly situated comparator better than the federal government.

The certification provision also does not unconstitutionally regulate the federal government in violation of the intergovernmental immunity

20

doctrine. That provision properly regulates the handling of the State's own information, not the federal government's operations. And to the extent that the requirement imposes some incidental cost on the federal government, the Supreme Court has "thoroughly repudiated" the idea that merely making the government's job more costly violates the intergovernmental immunity doctrine. *See North Dakota v. United States*, 495 U.S. 423, 434 (1990).

## ARGUMENT

The U.S. Constitution's federalism guarantee is rooted in the understanding "that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger v. Harris*, 401 U.S. 37, 44 (1971). Federalism therefore requires a "National Government, anxious though it may be to vindicate and protect federal rights and federal interests," to "do so in ways that will not unduly interfere with the legitimate activities of the States" as separate sovereigns. *Id.*

The Green Light Law's primary purposes of promoting driver safety and economic improvement and preserving the confidentiality of third-party information are among the fundamental sovereign activities

reserved to the States. As the Supreme Court has repeatedly made clear since the dawn of the automobile age, "[r]egulation to ensure [driver] safety is an exercise of the police power" that "is primarily a state function." *E.g.*, *Bradley v. Public Utils. Comm'n of Ohio*, 289 U.S. 92, 95 (1933); *see also Mackey v. Montrym*, 443 U.S. 1, 17 (1979) (State has "paramount interest" in "preserving the safety of its public highways"); *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 756 (1985) ("States traditionally have had great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons." (quotation marks omitted)). So too the protection of the State's own information and records—particularly when those include sensitive personal information—is a power reserved to the States. *See, e.g.*, *Whalen v. Roe*, 429 U.S. 589, 605 (1977) ("The right to collect and use [personal] data for public purposes is typically accompanied by a concomitant . . . duty to avoid unwarranted disclosures.").

In light of federalism principles, whenever Congress intends to take action that could affect sovereign state activities, and thus "alter the usual constitutional balance between the States and the Federal Government, it must make its intention to do so unmistakably clear." *Gregory*,

501 U.S. at 460 (quotation marks omitted). Relatedly, courts apply a strong presumption against federal preemption of state law, finding preemption only when that was the "clear and manifest" purpose of Congress, especially where a challenged law implicates a State's traditional powers. *See New York State Telecomms. Ass'n*, 101 F.4th at 148 (quotation marks omitted). That is because federal legislation affecting "areas traditionally regulated by the States" "is an extraordinary power in a federalist system . . . that we must assume Congress does not exercise lightly." *Gregory*, 501 U.S. at 460.[12]

Applying those principles to the challenged provisions of the Green Light Law here makes clear that those provisions are wholly consistent

---

[12] The district court did not reach the application of the presumption against preemption because it found that, "[e]ven without any presumption, Plaintiff's preemption claim fails." (J.A. 36 n.5.). Defendants agree that they prevail here regardless of the presumption. That said, plaintiff's arguments below against the application of the presumption are meritless. "The presumption applies when a state regulates in an area of historic state power even if the law touches on an area of significant federal presence, including immigration." *Geo Grp., Inc. v. Newsom*, 50 F.4th 745, 761 (9th Cir. 2022) (quotation marks and citation omitted); *see also, e.g.*, *DeCanas v. Bica*, 424 U.S. 351, 357-58 (1976) (applying presumption to reject preemption challenge to state law related to immigration).

23

with the Supremacy Clause.[13] Accordingly, the district court correctly dismissed plaintiff's complaint.

## POINT I

### FEDERAL LAW DOES NOT PREEMPT THE GREEN LIGHT LAW'S CHALLENGED PROVISIONS

The district court correctly rejected plaintiff's claim that the challenged provisions of the Green Light Law are preempted by federal law. On appeal, plaintiff contends, first, that 8 U.S.C. § 1373 expressly preempts the nondisclosure and certification provisions, and, second, that the notice provision conflicts with federal immigration law generally. Those contentions are meritless.

---

[13] On appeal, as in the substantive portions of the complaint, plaintiff challenges only the nondisclosure, notice, and certification provisions of the Green Light Law, *see* V.T.L. § 201(12)(a)-(b). Although the complaint's prayer for relief appears to extend to the entirety of the Law, neither the complaint nor this appeal provides any basis for such broad relief.

24

## A.    The Nondisclosure and Certification Provisions Are Not Preempted by 8 U.S.C. § 1373.

Section 1373 bars States and their officers (in addition to federal and local government entities and officers) from prohibiting or restricting "sending to, or receiving from, [federal immigration authorities] information regarding the citizenship or immigration status, lawful or unlawful, of any individual." 8 U.S.C. § 1373(a); *see id.* § 1644.[14] As the district court correctly concluded (J.A. 36-39), § 1373 does not preempt the Green Light Law's nondisclosure and certification provisions, and that is so for at least two independent reasons.

### 1.    The nondisclosure and certification provisions do not implicate information covered by § 1373.

Section 1373 governs only information regarding "citizenship or immigration status," *id.* § 1373(a), which is not information implicated by the Green Light Law's nondisclosure and certification provisions in the first instance. In actual operation, those provisions protect only the

---

[14] It is undisputed that 8 U.S.C. §§ 1373 and 1644 are "materially indistinguishable" in their coverage and may be analyzed together. *See* Br. 5-6. (*See also* J.A. 37 n.6 (citing cases).)

25

information and records that DMV collects for standard licenses, such as license holders' photographs and contact information. They do not protect citizenship or immigration status information, because DMV does not collect or retain such information for standard license applicants. *See* V.T.L. § 201(12)(a)-(b). To the contrary, the Green Light Law *bars* DMV from inquiring about, collecting, or retaining information revealing citizenship or immigration status. *See* V.T.L. § 502(8)(c) (standard license application forms "shall not state" "citizenship or immigration status" and related matters); 502(8)(d) (DMV "shall not retain" documents presented in standard license applications to prove age or identity, which could include foreign identity documents); 502(8)(e)(ii) (DMV shall not inquire about "citizenship or immigration status").

Plaintiff contends (Br. at 25-27) that the district court erred because it did not address whether DMV may restrict disclosure of any citizenship or immigration-status information in its possession. But this argument is unavailing because plaintiff does not allege that DMV actually possesses such information, and preemption may not rest on speculation. Preemption exists only if the plaintiff can show an "actual conflict." *English v. General Elec. Co.*, 496 U.S. 72, 89-90 (1990) (quotation marks omitted). The

26

"teaching of th[e Supreme] Court's decisions enjoins seeking out conflicts between state and federal regulation where none clearly exists." *Id.* at 90 (quotation and alteration marks omitted).

On this facial challenge, it is "inappropriate to assume" a conflict between the Green Light Law and § 1373 resulting in the preemption of the challenged provisions—particularly in light of the settled rule that laws should be construed to avoid constitutional doubt. *See Arizona*, 567 U.S. at 415. Indeed, identification of even a "possible set of . . . conditions not pre-empted by federal law is sufficient to rebuff [plaintiff's] facial challenge." *California Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 589 (1987). Here, at a minimum, the nondisclosure and certification provisions are not preempted as applied to any information other than that regarding citizenship or immigration status, i.e., they are not preempted as to the information that DMV actually collects and retains. Accordingly, plaintiff's facial challenge to those provisions cannot succeed.[15]

---

[15] Plaintiff misplaces its reliance (Br. at 26) on *United States v. Illinois*, 796 F. Supp. 3d 494 (N.D. Ill. 2025). That case did not hold that a state law restricting information disclosure ran "headlong" into § 1373 merely because it lacked an express "carveout" for "citizenship or immigration status" information. *See* Br. at 26. Rather, it held that the

(*continued on the next page*)

Plaintiff is also wrong to contend (Br. at 27-29) that § 1373 governs any information that "bear[s] on" or "can . . . be relevant to" citizenship or immigration status information. To be sure, such an extraordinarily broad view of what information is covered by § 1373 likely would sweep in information protected by the Green Light Law, such as home addresses. But numerous courts have considered plaintiff's contention that any information that might be *relevant* to citizenship or immigration status constitutes information "regarding" these statuses. And "[w]ithout exception, each has rejected the United States's capacious reading." *United States v. Illinois*, 796 F. Supp. 3d 494, 516-18 (N.D. Ill. 2025) (citing cases); *see also United States v. City of Los Angeles*, No. 25-cv-5917, 2026 WL 1790971, at \*2 (C.D. Cal. June 20, 2026) (agreeing more recently), *United States v. City of Boston,* No. 25-cv-12456, 2026 WL 1493706, at \*11 (D. Mass. May 28, 2026) (same); *United States v. New York*, 810 F. Supp. 3d 329, 349-50 (N.D.N.Y. 2025) (same), *appeal filed*, No. 26-104 (2d Cir. 2026).

---

state law conflicted with § 1373 because the state law expressly prohibited disclosure of "citizenship or immigration status" information. *See Illinois*, 796 F. Supp. 3d at 519. The Green Light Law has no such express prohibition.

28

Reading the plain language of § 1373, courts have consistently concluded that the "information regarding . . . immigration status" referenced in the statute is "naturally understood" to mean only immigration classification, *i.e.*, "what one's immigration status is"—not facts that merely bear on that status. *See United States v. California*, 921 F.3d 865, 891-92 (9th Cir. 2019). Because "the range of facts that might have some connection to federal removability or detention decisions is extraordinarily broad," the construction urged by plaintiff would be unworkably boundless in its reach. *Id.* at 891-92, 892 n.17.

Plaintiff errs in arguing (Br. at 27-28) that the structure of § 1373 supports its broad reading because subpart (c) uses the same statutory phrase—"citizenship or immigration status"—as subpart (a) but without the word "regarding." *See* 8 U.S.C. § 1373(c).[16] Viewed in the context of the statute as a whole, the two subparts, (a) and (c), are most naturally read as mirror images of each other: whereas § 1373(a) bars federal, state,

---

[16] 8 U.S.C. § 1373(c) provides that "The Immigration and Naturalization Service shall respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information."

or local government entities or officials from restricting the exchange of citizenship or immigration status information with federal immigration authorities, § 1373(c) obligates federal immigration authorities to provide the same information when the same government entities request it. *See* 8 U.S.C. § 1373(a), (b), (c). There is no reason to believe one subpart was intended to have a broader scope than the other.

If anything, "the fact that subpart (c) only concerns itself with immigration status suggests . . . that immigration status is the extent of subpart (a)'s reach as well." *California*, 921 F.3d at 892. Moreover, Congress's use of meaningfully broader language to describe information covered by other nearby statutory provisions underscores that the references to "citizenship or immigration status" information in § 1373(a) cannot be so broad. *See id.* (citing 8 U.S.C. § 1360(a)'s reference to "such other relevant information as the Attorney General shall require as an aid" to the creation of a noncitizen index, and § 1360(b)'s reference to any information "as to the identity and location of aliens in the United States"); *see also, e.g.*, 8 U.S.C. § 1367(a)(2) (referring to "any information which relates to" a noncitizen).

30

Plaintiff also errs in relying (Br. at 28) on two isolated legislative history excerpts because the statutory text is clear, and "Congress's authoritative statement is the statutory text, not the legislative history." *See, e.g., Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 599 (2011) (plurality op.) (quotation marks omitted). In any event, the congressional reports on which plaintiff relies lend plaintiff no support. One of the two simply restates the text of the statute. *See* S. Rep. No. 104-249, at 19-20 (1996) (§ 1373(a) aims to facilitate information "regarding a person's immigration status"). And the other report offers no justification for its apparent view that any information about the "presence, whereabouts, or activities" of noncitizens would be covered by § 1373. *See* H.R. Rep. No. 104-725, at 383 (1996) (Conf. Rep.). Indeed, the latter report may undermine plaintiff's position, in that it refers to the kind of information plaintiff seeks (that is, information about the "presence, whereabouts, or activities" of noncitizens) as *separate* from—and so not encompassed by—"'information regarding [a noncitizen's] immigration status.'" *California*, 921 F.3d at 892 n.18 (quoting H.R. Rep. No. 104-725, at 383). The district court correctly held that § 1373 covers only that latter, limited category

31

of information, and thus does not preempt the Green Light Law's nondisclosure and certification provisions.

### 2. Section 1373 is not a valid preemption provision.

Even if the nondisclosure and certification provisions did implicate information covered by § 1373—and they do not, see *supra* at 25-27—§ 1373 would have no preemptive effect. That is because "every form of preemption is based on a federal law that regulates the conduct of private actors"—not government officials. *See Murphy*, 584 U.S. at 479. And § 1373 does not regulate the conduct of private actors; it regulates only the sharing of information between government officials.

Every court to have addressed the issue has concluded that § 1373 does not have preemptive effect under *Murphy*.[17] A Third Circuit opinion

---

[17] *See Ocean Cnty. Bd. of Comm'rs v. Attorney Gen.*, 8 F.4th 176, 182 (3d Cir. 2021); *United States v. Minnesota*, No. 25-cv-3798, 2026 WL 2085701, at \*14 (D. Minn. July 20, 2026); *New York*, 810 F. Supp. 3d at 350; *Illinois*, 796 F. Supp. 3d 494, at 519-24; *County of Ocean v. Grewal*, 475 F. Supp. 3d 355, 372 (D.N.J. 2020), *aff'd sub nom. Ocean Cnty. Bd. of Comm'rs v. Attorney Gen.*, 8 F.4th 176 (3d Cir. 2021); *Colorado v. U.S. Department of Just.*, 455 F. Supp. 3d 1034, 1059 (D. Colo. 2020); *Oregon v. Trump*, 406 F. Supp. 3d 940, 972 (D. Or. 2019), *aff'd in part & vacated in part on other grounds, City & Cnty. of San Francisco v. Garland*, 42 F.4th 1078 (9th Cir. 2022); *City & Cnty. of San Francisco v. Sessions*, 349 F. Supp. 3d 924, 950 (N.D. Cal. 2018), *aff'd in part & vacated in part on*

(*continued on the next page*)

is illustrative. *See Ocean Cnty. Bd. of Comm'rs v. Attorney Gen.*, 8 F.4th 176 (3d Cir. 2021). That case involved a preemption challenge to state laws governing information sharing with federal immigration authorities similar to the challenged provisions here. *Id.* at 178-79. The Third Circuit rejected plaintiffs' claim that those laws were preempted by § 1373, because the text of § 1373 sets forth "a clear prohibition on *state* action," and "cannot be fairly read" as regulating private actors. *See id.* at 182 (emphasis in original). Therefore, it "cannot serve as a basis for preemption." *See id.* This Court should not depart from this unanimous line of precedent—which provides a second, independent basis for rejecting plaintiff's claim that § 1373 expressly preempts the Green Light Law's nondisclosure and certification provisions.

---

*other grounds*, 965 F.3d 753 (9th Cir. 2020). This Court's prior decision in *New York v. Department of Justice*, 951 F.3d 84 (2d Cir. 2020), does not hold otherwise. In fact, the Court expressly declined to "conclusively decide the preemptive effect of § 1373." *Id.* at 114 n.27.

## B.   The Notice Provision Is Not Conflict Preempted.

In addition to express preemption, another form of preemption is "conflict" preemption, which applies when a state law "directly conflicts with the structure and purpose of a federal statute." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 725 F.3d 65, 97 (2d Cir. 2013). Although plaintiff contends on appeal (Br. at 16-22) that the notice provision of the Green Light Law is conflict preempted, the district court correctly concluded otherwise.[18] Plaintiff maintains that the notice provision creates "an obstacle to the enforcement of federal immigration law" (Br. at 16; *see id.* at 20) that may "interfere with federal investigation" (*id.* at 18). But plaintiff identifies no specific provision of federal law with whose structure and purpose the notice provision conflicts, and so cannot demonstrate conflict preemption.

As the Supreme Court and this Court have repeatedly recognized, a party seeking to establish conflict preemption carries a heavy burden: "a freewheeling judicial inquiry into whether a state statute is in tension

---

[18] Plaintiff does not contend on appeal that any other provision of the Green Light Law is conflict preempted. Any such contention is thus waived. *See, e.g.*, *Gross v. Rell*, 585 F.3d 72, 95 (2d Cir. 2009).

34

with federal objectives" is not enough. *Whiting*, 563 U.S. at 607 (plurality op.); *see New York State Telecomms. Ass'n*, 101 F.4th at 155. Nor is the mere "possibility that federal enforcement priorities might be upset." *Kansas v. Garcia*, 589 U.S. 191, 212 (2020). Rather than "[i]nvoking some brooding federal interest," *Virginia Uranium, Inc. v. Warren*, 587 U.S. 761, 767 (2019) (plurality op.), "a litigant must point specifically to a constitutional text or a federal statute that does the displacing" of the state law. *Id.* at 767 (2019) (plurality op.) (quotation marks omitted). That is because "[t]he Supremacy Clause gives priority to 'the Laws of the United States,' not the . . . law enforcement priorities or preferences of federal officers." *Kansas*, 589 U.S. at 212 (quoting U.S. Const. art. VI, cl. 2).

Plaintiff does not come close to meeting its heavy burden here. The notice provision merely requires that DMV give notice to individuals whose personal information contained in its driver's license records may be disclosed. *See* V.T.L. § 201(12)(a). Providing such notice allows the individuals—who are not parties to the transaction between the requesting agency and DMV—to raise any appropriate legal or factual objection to the requested disclosure, for instance, that it is based on misidentification of the individual. Indeed, similar notice requirements are common

provisions for protecting the confidentiality of third parties and facilitating the raising by them of any objections to disclosure, including in federal law. See *supra* at 12 (citing 5 U.S.C. § 552a(o)(1)(D); 12 U.S.C. § 3405(2); 18 U.S.C. § 2703(b)(1)(B)).

Here, giving third parties notice and opportunity to object to the disclosure of their personal information helps ensure that the individuals at issue are not deterred from applying for a driver's license in the first place, which would thwart the State's goals of expanding the pool of licensed drivers and thereby advancing public safety and economic development in the State. See *supra* at 11-12.

Plaintiff's unsupported assertions about a purported purpose of the notice provision to "tip off" immigration enforcement targets (*see, e.g.*, Br. at 18) are contrary to the legislative history of the Green Light Law discussed above and do not support preemption. Plaintiff provides no evidence that Congress intended to preempt a common notice provision, much less the requisite "clear and manifest" evidence mandated by the presumption against preemption, *e.g.*, *New York State Telecomms. Ass'n*, 101 F.4th at 148. And that presumption is "especially strong" for state laws, like the notice provision, that represent the exercise of a State's

36

traditional powers, *e.g.*, *New York Pet Welfare Ass'n v. City of New York*, 850 F.3d 86 79, 86 (2d Cir. 2017), here, over public safety and protection of the State's own information and records.

Plaintiff identifies no provision of federal law that prohibits state agencies from notifying individuals when their personal information may be disclosed to third parties, and defendants are aware of none. The provisions of federal immigration law identified by plaintiff requiring federal immigration authorities to provide notice or information to noncitizens or States at various additional times (Br. at 17, 19) in no way conflict with the state-law notice provision at issue here, much less in "so direct and positive" a way that the laws "cannot be reconciled." *In re MTBE Prods. Liab. Litig.*, 725 F.3d at 102 (quotation marks omitted).

Nor does the federal criminal law prohibiting harboring an undocumented person on which plaintiff relies (Br. at 17 (citing 8 U.S.C. § 1324(a)(1)(A)(iii))), conflict with the notice provision, much less irreconcilably. The federal law prohibits knowing or reckless "harbor[ing] or shield[ing] from detection" an undocumented person "in any place, including any building or any means of transportation." 8 U.S.C. § 1324(a)(1)(A)(iii). As this Court explained in an earlier unsuccessful

37

preemption challenge to the Green Light Law, a violation of the harboring law requires that the defendant "engage in conduct that is intended both to substantially help an unlawfully present alien remain in the United States—such as by providing him with shelter, money, or other material comfort—and also is intended to help prevent the detection of the alien by the authorities." *See Kearns v. Cuomo*, 981 F.3d 200, 208 (2d Cir. 2020). Examples include "physical concealment" or "alert[ing] undocumented immigrants to the physical approach of immigration authorities," or "arranging sham marriage ceremonies." *See id.* "[C]ompliance with the Green Light Law does not require [the State] to do anything like this" by merely requiring notice of potential disclosure of individuals' personal information. *See id.*

Although plaintiff points (Br. at 19) to various other provisions of federal immigration law that it asserts reflect an implicit expectation of state-federal cooperation, plaintiff does not assert that any of those provisions *requires* cooperation—much less in the specific form of not telling individuals that their personal information might be disclosed to immigration authorities, and much less mandating such cooperation in a "clear and manifest" way, *e.g.*, *New York State Telecomms. Ass'n*, 101

38

F.4th at 148. As the Seventh Circuit explained in rejecting a similar conflict preemption challenge, though "Congress may have hoped or expected that States would cooperate" in various ways with federal immigration authorities, "States are not bound by that hope or expectation." *McHenry Cnty. v. Raoul*, 44 F.4th 581, 592 (7th Cir. 2022).

Moreover, plaintiff's complaint nowhere even alleges that the notice provision has prevented federal immigration authorities from carrying out their immigration enforcement duties. At most, the complaint alleges that immigration enforcement would be easier without the confidentiality provisions of the Green Light Law more generally. However, as the Ninth Circuit explained in rejecting a similar preemption challenge, "refusing to help is not the same as impeding," and "[w]e cannot simply assume that Congress impliedly mandated that state and local governments" assist immigration enforcement. *California*, 921 F.3d at 887-88.

Finally, plaintiff is wrong to contend (Br. at 21-22) that the notice provision is both "over- and underinclusive." As an initial matter, whether the provision is over- or underinclusive to its purposes does not bear on whether it is preempted, which is exclusively a function of whether a

39

federal law clearly displaces the state law. In any event, both contentions are incorrect.

Plaintiff's contention that the notice provision is overinclusive is based on the mistaken assumption that the provision applies broadly to information requests related to criminal matters. That is not so: the provision applies only to information requests from agencies that primarily enforce immigration law (e.g., U.S. Immigration and Customs Enforcement). *See* V.T.L. § 201(12)(a), (c). Thus, the notice provision should not interfere with criminal investigations. Indeed, DMV regularly complies with grand jury subpoenas issued pursuant to criminal investigations seeking driver information and has not construed the notice provision to apply to such requests. At the same time, the notice provision appropriately gives persons who are the subject of requests by immigration enforcement agencies, and who may have been misidentified or have a valid legal objection to any disclosure, an opportunity to contest the validity of the disclosure before their personal information is released—with potentially severe and irreparable consequences such as detention and removal from the United States.

Plaintiff is similarly mistaken in its contention that the notice provision is underinclusive because it applies only to information requests from agencies that primarily enforce immigration law. The core purpose of the Green Light Law is to expand driver's license access to more immigrants—regardless of immigration status—and the Legislature determined that that goal could be effectively achieved only if immigrants felt confident that the information provided in their license applications would not be used against them by immigration authorities. Consequently, the Legislature included, in addition to more general confidentiality provisions, a nondisclosure provision to restrict disclosure of personal information from driver's license records to immigration authorities, and a notice provision to permit objections to any such disclosure. A broader scope beyond immigration authorities is not necessary to serve the core purpose of the Green Light Law.

**C.    Finding the Challenged Provisions to Be Preempted Would Conflict with the Tenth Amendment's Anticommandeering Principle.**

The doctrine of constitutional avoidance further counsels against interpreting federal law to preempt the challenged Green Light Law provisions. That is because finding some federal provision or combination of provisions to have preemptive effect here would raise serious constitutional questions. And, where possible, courts should construe ambiguous laws to avoid such questions. *See, e.g.*, *Golb v. Attorney Gen. of N.Y.*, 870 F.3d 89, 103 (2d Cir. 2017).

Specifically, any federal law that compelled the State to share its information and records with federal immigration authorities for their own use, or prohibited the State from notifying individuals whose personal information is sought by these authorities, would likely run afoul of the Tenth Amendment's anticommandeering principle. As discussed, the anticommandeering principle prohibits Congress from compelling state officers and resources to assist in federal regulatory schemes. See *supra* at 5 (citing *Printz*, 521 U.S. at 935). And that principle applies equally to "affirmative" compelling and "imposing a prohibition" on States. *See Murphy*, 584 U.S. at 475. If a State were unable to enact laws like the

challenged provisions to control its own information and records, and protect its own sovereign interests in public safety and economic development, then the State would be commandeered against its will to assist in a federal regulatory scheme—here, immigration enforcement. But that is exactly what the Tenth Amendment forbids. By protecting the States' sovereign prerogatives, the anticommandeering doctrine prevents the federal government "from shifting the costs of regulation to the States," and from undermining political accountability by "blurr[ing]" responsibility for the federal enforcement scheme. *Id.* at 473-74.

To be sure, this Court has held (before the Supreme Court's *Murphy* decision) that 8 U.S.C. § 1373 is not *facially* unconstitutional under the anticommandeering doctrine, because it does not, on its face, compel the State to assist in a federal regulatory scheme. *See City of New York*, 179 F.3d 29. But the Court expressly did not decide whether § 1373 (much less any of the other provisions of federal law on which plaintiff relies here) could survive an anticommandeering challenge if the law were interpreted to ban "generalized confidentiality policies that are necessary to the performance of legitimate [state] functions"—like the provisions of the Green Light Law at issue here. *See id.* at 37; *see also New York v.*

*Department of Just.*, 951 F.3d 84, 114 (2d Cir. 2020). And § 1373 could not survive such a challenge where, as here, banning such provisions would compel the State to assist in federal immigration enforcement to the detriment of legitimate state functions.

Finally, insofar as plaintiff suggests that it is not seeking to compel the State to assist in immigration enforcement, but rather to remove impediments to the federal government's own enforcement, plaintiff disregards reality. Compelling the State to provide federal immigration authorities with information and records entrusted to it by standard driver's license applicants *is* compelling the State to take action to assist in immigration enforcement; it is not merely removing an impediment to federal action. Moreover, any marginal impediment to federal immigration enforcement that the challenged state laws might impose "is permissible, because [the State] has the right, pursuant to the anticommandeering rule, to refrain from assisting with federal efforts." *See California*, 921 F.3d at 891.

44

## POINT II

### THE GREEN LIGHT LAW'S CHALLENGED PROVISIONS DO NOT VIOLATE THE INTERGOVERNMENTAL IMMUNITY DOCTRINE

As with preemption, courts do not lightly conclude that the Supremacy Clause bars state laws through the intergovernmental immunity doctrine. A state law is invalid under the doctrine only if it discriminates against, or "directly" regulates, the federal government, regardless of any burdens the state law may impose on the federal government. *North Dakota*, 495 U.S. at 435. Courts considering the intergovernmental immunity doctrine must "accommodate[] the full range of each sovereign's legislative authority." *Id.* And, because the doctrine asserts federal supremacy without any federal statute on which the supremacy is based, courts must also be "respectful of the primary role of Congress in resolving conflicts between the National and State Governments." *Id.* The district court correctly found that plaintiff failed to meet that high standard in this case.

45

## A. The Challenged Provisions Do Not Discriminate Against the Federal Government.

Plaintiff first erroneously argues on appeal (Br. at 22-24, 29, 36-37) that the challenged provisions of the Green Light Law unconstitutionally discriminate against the federal government.

As an initial matter, plaintiff did not clearly allege in its complaint that the notice and certification provisions discriminate against the federal government. (*Compare, e.g.*, J.A. 20-21 (alleging that the "tip-off [i.e., notice] provision" is preempted and the "certification requirement" unlawfully regulates), *with* J.A. 22 (including no allegations about those provisions in the discrimination count).) The district court therefore was correct, and at a minimum did not abuse its discretion, in finding those claims waived (J.A. 48 n.11). *See, e.g.*, *Amara v. Cigna Corp.*, 53 F.4th 241, 256 (2d Cir. 2022) (waiver findings reviewed for abuse of discretion). The claims thus are not properly before this Court. *See, e.g.*, *New York City Env't Just. All. v. Giuliani*, 214 F.3d 65, 67 n.2 (2d Cir. 2000).

Regardless, plaintiff's discrimination arguments are meritless as to each of the (now) challenged provisions. A state law does not unconstitutionally discriminate against the federal government unless it treats someone else, similarly situated to the federal government, better than it

46

treats the federal government. *Washington v. United States*, 460 U.S. 536, 544-45 (1983); *see North Dakota*, 495 U.S. at 438. The precedent on which plaintiffs rely (Br. at 23, 29, 36) underscores this point. For instance, *United States v. Washington*, 596 U.S. 832 (2022), found a state law unconstitutionally discriminatory only because it facially imposed (workers' compensation) costs on the federal government that similarly situated "state or private entities do not bear." *Id.* at 839. By contrast, here, the challenged provisions impose no discriminatory burden on the federal government that is not applicable to a similarly situated comparator.

To be sure, the challenged nondisclosure and notice provisions govern information requests only from agencies that primarily enforce immigration law. *See* V.T.L. § 201(12)(a). And the certification provision, though facially neutral in applying to anyone accessing information from DMV, requires certification only that the information will not be used for civil immigration purposes or redisclosed to agencies that primarily enforce immigration laws. *See id.* § 201(12)(b). And immigration enforcement is a distinctly federal function. *See, e.g., Arizona*, 567 U.S. at 394. However, by restricting disclosures to federal authorities for immigration enforcement, and imposing notice and certification requirements in relation to

47

such disclosures, the challenged provisions do not treat anyone else better than the federal government. So, there is no discrimination problem. States do not discriminate against the federal government by exercising their sovereign prerogative to decline to assist with a federal function.

Sister circuits have repeatedly rejected discrimination-based intergovernmental immunity challenges to similar state laws limiting involvement in federal immigration enforcement. *See McHenry Cnty.*, 44 F.4th at 594; *California*, 921 F.3d at 881. As those courts have explained, "[t]he mere fact that the Act touches on an exclusively federal sphere is not enough to establish discrimination." *McHenry Cnty.*, 44 F.4th at 594. "Differential treatment is critical to a discrimination-based intergovernmental immunity claim." *Id.* Intergovernmental immunity "is not implicated when a state merely references or even singles out federal activities in an otherwise innocuous enactment." *California*, 921 F.3d at 881.

Plaintiff errs in suggesting (Br. at 23-24) that state and local law enforcement are similarly situated comparators that the Green Light Law treats better than federal immigration authorities. Although the challenged provisions do not regulate disclosures to state and local law enforcement, state and local law enforcement are not similarly situated

48

to federal immigration authorities. State and local law enforcement do not engage in immigration enforcement. Accordingly, the purpose of the challenged provisions to limit disclosure "for civil immigration purposes," *see* V.T.L. § 201(12)(a)-(b), and to establish confidence among license applicants that the information they provide will not be used for such purposes, would not be served by limiting disclosures to state and local law enforcement. Such "significant differences between the two classes" easily justify any "differential treatment," thus defeating the intergovernmental immunity claim. *Dawson v. Steager*, 586 U.S. 171, 175 (2019) (quotation marks omitted).

**B.** **The Certification Provision Regulates State Information, Not the Manner in Which the Federal Government Conducts Its Operations.**

Plaintiff also misses the mark in arguing (Br. at 30-36) that the Green Light Law's certification provision unconstitutionally regulates the federal government.[19] The certification provision regulates the use of *state* information or records: specifically, the state DMV commissioner must require that anyone who has or receives access to DMV information or records certifies that the information will not be used or disclosed for unauthorized (i.e., civil immigration) purposes. *See* V.T.L. § 201(12)(b). The provision was enacted to advance the State's interests in the protection of its own information, and the public safety and other benefits that come with license applicants having confidence that their information will remain private. See *supra* at 11-12.

Laws that advance States' core sovereign interests in shielding their sensitive third-party information do not violate the intergovernmental immunity doctrine. As discussed, courts applying that doctrine must

---

[19] Plaintiff does not argue on appeal, and thus waives any argument, that any other provision of the Green Light Law unconstitutionally regulates the federal government. *See, e.g., Gross*, 585 F.3d at 95.

50

accommodate "the full range" of States' sovereign lawmaking authority. *See North Dakota*, 495 U.S. at 435. The doctrine restricts only "direct[]" state regulation of the federal government, most commonly through taxation. *See id.* The certification provision here does not directly regulate the federal government. It regulates "the commissioner" of the state DMV, who must require the statutorily defined certification, and it ultimately regulates the use of DMV's information by anyone, from the federal government or otherwise. V.T.L. § 201(12)(b). As the Seventh Circuit has observed, when the State is not directly regulating the federal government, a State statute does not present an intergovernmental immunity problem merely because one "consequence of the Act," or even "*the intended consequence of the Act*," may be that the federal government is not able to use certain state resources as it wishes. *See McHenry Cnty.*, 44 F.4th at 593.

Plaintiff cites no case finding that a state law regulating a State's own information or property violates the intergovernmental immunity doctrine, and defendants are aware of none. The cases plaintiff cites (Br. at 30-31) are inapposite. Several of those cases involve state or local attempts to regulate *federal* property interests—which the State plainly

is not attempting with the certification provision at issue here. *See, e.g.*, *Hancock v. Train*, 426 U.S. 167, 180 (1976) (rejecting state permit requirement for federal facilities that was "tantamount to prohibiting operation of the federal installations"); *Arizona v. California*, 283 U.S. 423, 455-56 (1931) (rejecting state regulation of river waters deemed navigable and thus within the federal government's own authority); *United States v. Town of Windsor*, 765 F.2d 16, 19 (2d Cir. 1985) (rejecting local regulation of federally classified atomic power facility); *see also Mayo v. United States*, 319 U.S. 441, 447 (1943) (rejecting state tax on federal government).

Although the certification provision here may impose some incidental cost or burden on the federal government to complete and adhere to the certification when it receives information or records from DMV, and to keep records concerning the use of such information, the Supreme Court has "thoroughly repudiated" the argument that merely "mak[ing] it more costly for the Government to do its business" violates the intergovernmental immunity doctrine. *See North Dakota*, 495 U.S. at 434 (quotation marks omitted). Where, as here, federal authorities remain free to carry out their immigration enforcement activities in the State as

they see fit—which they have done both before and after the provision's enactment—intergovernmental immunity is not implicated.

Accordingly, sister circuits have repeatedly rejected intergovernmental immunity challenges to state laws that impose costs on federal immigration enforcement comparable to, or greater than, any imposed by the certification provision. For instance, those courts have rejected intergovernmental immunity challenges to state laws limiting where and how federal immigration detainees can be housed in the State, *see, e.g.*, *Geo Grp., Inc. v. Inslee*, 151 F.4th 1107, 1116-18 (9th Cir. 2025); *Nwauzor v. GEO Grp., Inc.*, 127 F.4th 750, 771 (9th Cir. 2025); *McHenry Cnty.*, 44 F.4th at 585, 592-93, and even one raised against a lawsuit brought by a State to limit the actions the federal government could take in patrolling the border, *see Texas v. United States Dep't of Homeland Security*, 123 F.4th 186, 205-08 (2024).

The cases plaintiff cites (Br. at 32) that found state laws burdening immigration enforcement to unconstitutionally regulate the federal government typically involved States' broad prohibitions on the relevant federal enforcement activity statewide. *See CoreCivic, Inc. v. Governor of N.J.*, 145 F.4th 315, 320, 329 (3d Cir. 2025) (rejecting state law prohib-

iting immigration detention contracts statewide); *Geo Grp., Inc. v. Newsom*, 50 F.4th 745, 758 (9th Cir. 2022) (rejecting state law prohibiting immigration detention in the State altogether). The certification provision bears no resemblance to these prohibitions. Likewise, *United States v. California*, 173 F.4th 1060, 1067 (9th Cir. 2026), on which plaintiff also relies (Br. at 32-33), involved a state regulation that the court interpreted to directly regulate the qualification of federal officers—a circumstance that is also not at issue here.

* * *

Accordingly, the district court correctly rejected plaintiff's arguments that the challenged provisions of the Green Light Law violate the intergovernmental immunity doctrine. And any contrary conclusion would likely violate the Tenth Amendment's anticommandeering principle by compelling the State to assist federal immigration enforcement, for the reasons discussed above (*supra* at 42-43).

## CONCLUSION

The Court should affirm the judgment of the district court.

Dated:  New York, New York
July 29, 2026

Respectfully submitted,

LETITIA JAMES
*Attorney General*
*State of New York*
Attorney for Appellees

By:  */s/ Philip J. Levitz*
PHILIP J. LEVITZ
Senior Assistant Solicitor General

BARBARA D. UNDERWOOD
*Solicitor General*
JEFFREY W. LANG
*Deputy Solicitor General*
PHILIP J. LEVITZ
*Senior Assistant Solicitor General*
*of Counsel*

28 Liberty Street
New York, New York 10005
(212) 416-6325

55

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, Oren L. Zeve, an employee in the Office of the Attorney General of the State of New York, hereby certifies that according to the word count feature of the word processing program used to prepare this brief, the brief contains 10,214 words and complies with the typeface requirements and length limits of Rule 32(a)(5)-(7) and Local Rule 32.1.

_/s/ Oren L. Zeve_